## In re ML–LEE ACQUISITION FUND II, L.P. AND ML–LEE ACQUISITION FUND (RETIREMENT ACCOUNTS) II, L.P. SECURITIES LITIGATION.

### Civ. A. No. 92–60–JJF.

United States District Court, D. Delaware.

March 31, 1994.

---

Content is fully redacted.

Pamela S. Tikellis, Carolyn D. Mack, and James C. Strum, of Chimicles Jacobsen & Tikellis, Wilmington, DE, Michael J. Freed, and Carol V. Gilden, of Much Shelist Freed Denenberg & Ament, Chicago, IL, William J. French, Robert L. Gegios, and Glen E. Lavy, of Gibbs Roper Loots & Williams, Milwaukee, WI, James S. Youngblood, of Atlanta, GA, for plaintiffs.

Kenneth J. Nachbar, of Morris Nichols Arsht & Tunnell, Wilmington, DE, James N. Benedict, Mark Holland, David J. Lewittes, Martin L. Seidel, Laura L. Icken, James F. Moyle, and Jeffrey N. Naness, of Rogers & Wells, New York City, for defendants Mezzanine Investments II, L.P., ML Fund Administrators, Inc., Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc. d/b/a Merrill Lynch Capital Markets, ML Mezzanine II, Inc., Matthew D. Castagna, Warren C. Smith, Jr., Rosalie Y. Goldberg, Robert Miller, Frederick J.C. Butler, Kevin K. Albert, Jerome P. Greene, and J. Huston McCullough II.

Stephen E. Herrmann, of Richards Layton & Finger, Wilmington, DE, Sanford F. Remz and Richard S. Nicholson, of Hutchins Wheeler & Dittmar, Boston, MA, for defendants Thomas H. Lee Co., T.H. Lee Mezzanine II, Thomas H. Lee Advisors II, L.P., and Thomas H. Lee.

Michael D. Goldman, and Stephen C. Norman, of Potter Anderson & Corroon, Wilmington, DE, John D. Donovan, Jr., and Michael K. Fee, of Ropes & Gray, Boston, MA, for defendants ML Lee Acquisition Fund II, L.P., ML Lee Acquisition Fund (Retirement Accounts) II, L.P., Vernon R. Alden, Joseph L. Bower, and Stanley H. Feldberg.

David C. McBride, of Young Conaway Stargatt & Taylor, Wilmington, DE, Brackett B. Denniston, III, J. Anthony Downs, and Todd Hahn, of Goodwin Procter & Hoar, Boston, MA, for defendant Hutchins Wheeler & Dittmar.

OPINION

FARNAN, District Judge.

## I. INTRODUCTION

Presently before the Court in this putative securities class action are a number of motions filed by both parties: (1) Defendants' motions to dismiss the second consolidated amended complaint ("complaint"),[1] (2) Plaintiffs' motion to disqualify Hutchins, Wheeler & Dittmar as counsel for the Lee Defendants, (3) Plaintiffs' motion for class certification, (4) Plaintiffs' motion to file third consolidated amended complaint, and (5) two motions to compel filed by Plaintiffs. For the reasons stated, the Court will (1) grant in part and dismiss in part both Defendants' motions to dismiss, (2) deny Plaintiffs' motion to disqualify HW & D, (3) grant Plaintiffs' motion for class certification, (4) grant in part and deny in part Plaintiffs' two motions to compel, and (5) deny Plaintiffs' motion to file third consolidated amended complaint.

### A. *The Parties*

#### 1. *The Plaintiffs*

Plaintiff Ronald Goldstein purchased twenty units of Fund II on November 10, 1989. Plaintiff William Seidel purchased ten units of Retirement Fund II on November 10, 1989.

#### 2. *The Funds*

ML–Lee Acquisition Fund II, L.P. ("Fund II") and ML–Lee Acquisition Fund (Retirement Accounts) II, L.P. ("Retirement Fund II") (together with Fund II designated "the Funds") are Delaware limited partnerships. In addition, both are closed-end mutual funds. The Funds are business development

1. There are two motions to dismiss. The first was filed by the following defendants: ML–Lee Acquisition Fund II, Thomas H. Lee, Thomas H. Lee Advisors II, L.P., Thomas H. Lee Company, T.H. Lee Mezzanine II, Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc., Mezzanine Investment II, L.P., ML Mezzanine II, Inc., ML Fund Administrators, Inc., Matthew D. Castagna, Warren C. Smith, Jr., Rosalie Y. Goldberg, Robert Miller, Frederick J.C. Butler, Kevin K. Albert, Jerome P. Greene, J. Huston McCullough II, Vernon R. Alden, Joseph L. Bower, and Stanley H. Feldberg. The second motion to dismiss was filed by defendant Hutchins, Wheeler & Dittmar.

companies under the Investment Company Act and reporting companies under the 1934 Act. Fund II is authorized to borrow money, and thus Fund II is distinguishable from Retirement Fund II in that certain tax-exempt investors cannot invest in Retirement Fund II.

### 3. *The Lee Defendants*

Defendant Thomas H. Lee Advisors II, L.P. ("Advisors II"), also a Delaware limited partnership, serves as the investment adviser to the Funds. Individual defendant Thomas H. Lee ("Lee") is an individual general partner of the Funds and of Advisors II. Defendant Thomas H. Lee, Co. ("the Lee Co.") is a sole proprietorship owned by Mr. Lee. The Lee Co. formed Advisors II and several of its managers have interests in and are advisors to Advisors II.

The other individual general partners of the Funds are Vernon R. Alden, Joseph L. Bower, and Stanley H. Feldberg ("IGPs"). Defendant T.H. Lee Mezzanine II ("Lee II"), a Massachusetts business trust, is an administrative general partner of Advisors II.

### 4. *The Merrill Lynch Defendants*

Merrill Lynch & Co., Inc. ("Merrill") is a Delaware corporation. Merrill Lynch, Pierce, Fenner & Smith, Inc. ("MLPF & S"), a wholly owned subsidiary of defendant Merrill, is the underwriter for the Funds' offering. ML Mezzanine II, Inc. ("ML Mezzanine"), also a wholly-owned subsidiary of Merrill, is the sole general partner of defendant Mezzanine Investments II, L.P. ("Mezzanine Investments"). Mezzanine Investments is a limited partnership, with Advisors II serving as its sole limited partner. Mezzanine Investments serves as the managing general partner of the Funds.

ML Fund Administrators, Inc. ("Administrators"), a Delaware corporation and another wholly-owned subsidiary of Merrill, is the administrator of the Funds.

### 5. *The Individual Defendants*

Individual Defendants Matthew D. Castagna, Rosalie Y. Goldberg, Robert Miller, Frederick J.C. Butler, Kevin K. Albert, Jerome P. Greene, Warren C. Smith, Jr., and J. Huston McCullough ("Individual Defendants") are the officers and directors of the managing partners of the Funds.

### 6. *Hutchins, Wheeler & Dittmar*

Defendant HW & D is a law firm which serves as general counsel to the Funds. HW & D advised the Securities and Exchange Commission ("SEC") that the Funds would not make any investments in companies that were controlled by Lee Co. in absence of an exemptive order under section 57(a) of the Investment Company Act.

## B. *Relevant Non-parties*

### 1. *Fund I*

Like the Funds, Fund I is a Delaware limited partnership. Lee and the individual general partners of the Funds serve as the individual general partners of Fund I. Thomas H. Lee Advisors I ("Advisors I") serves as the investment advisor to Fund I. The officers and directors of Advisors I serve as officers and directors of Advisors II.

### 2. *Hills Department Stores, Inc.*

Hills Department Stores, Inc. ("Hills") is a Delaware corporation that has been controlled by Lee since 1985. Both Fund I and Funds invested in Hills. Most, if not all, of Lee II's officers and directors and Advisor II's limited partners and officers owned stock in Hills. Throughout the late 1980's, Hills was in a precarious financial condition. Funds II eventually invested in Hills. Subsequently, Hills filed for bankruptcy.[2]

### 3. *Petco Animal Supplies Inc.*

Petco Animal Supplies, Inc. ("Petco") is a Delaware corporation. On July 20, 1988, Lee Co., Fund I, and Drexel Burnham Lambert, Inc. ("Drexel"), among others acquired the predecessor to Petco through a leveraged buyout. Fund I and Lee Co. acquired 18.5% and 4.5% respectively of Petco Holding Company ("PHC"). Petco was a wholly owned subsidiary of PHC. By November 30, 1988,

2. A more detailed discussion of the facts with respect to the Funds' investments appears below.

Fund I owned 24.7% of PHC common stock. Fund I also owned several million dollars worth of Petco's debt securities. Drexel also acquired a significant amount of Petco's debt securities as well as approximately 7.6% of PHC common stock. Funds II eventually made various unsuccessful investments in Petco, including a purchase of Petco debt securities from Drexel.

#### 4. *Stanley Interiors*

Stanley Interiors is a Delaware corporation. Fund I and Lee Co. owned approximately 60% and 40% respectively of the common stock of Stanley Holding Company ("SHC"). As of October 16, 1992, all outstanding stock of Stanley was held by Stanley Acquisition Corporation, a wholly-owned subsidiary of SHC. Fund I also purchased significant amounts of Stanley's debt securities. The Funds eventually made an unsuccessful investment in Stanley debt securities.

## II. DISCUSSION

Plaintiff Seidel commenced suit on February 3, 1992 and plaintiff Goldstein filed a substantially identical complaint on February 5, 1992.[3] Plaintiffs' claims are based upon sections 11, 12(2) and 15 of the Securities Act of 1933 ("1933 Act")[4], sections 10(b) and 20 of the Securities Exchange Act of 1934 ("1934 Act")[5], Rule 10b-5 promulgated pursuant to section 10(b) of the 1934 Act[6], sections 17(j), 36, 48 and 57 of the Investment Company Act of 1940[7] and Rule 17j promulgated pursuant to section 17(j) of the Investment Company Act.[8]. The following factual allegations form the basis of the substantive causes of action spelled out in the Complaint.

Plaintiffs purchased the limited partnerships of the defendant Funds between November 10, 1989 and January 5, 1990. Plaintiffs allege they were induced to make their investments on the basis of a materially false Prospectus. Plaintiffs contend the Prospectus was false because it stated specific investment guidelines would be followed and that the investment adviser or its affiliates would make contemporaneous coinvestments in the mezzanine investments in managed companies made by the Funds.[9] Plaintiffs further contend the Prospectus was false in stating that until at least 75% of each of the Funds' net offering proceeds had been invested or committed to investment Advisors II and its affiliates would act exclusively on behalf of the Funds. Finally, Plaintiffs assert the Prospectus also falsely stated that no specific investments had been contemplated for the Funds prior to the offering.

Through a public offering between November 10, 1989 and January 5, 1990, 33,584 investors purchased Units in the Funds worth approximately $400,360,000. On April 3, 1990, after extensive consideration by the partners of the Funds and Advisors II, Funds invested $48,500,000 in Hills by purchasing 15% Junior Notes due 1998. At the time Hills was a financially ailing company[10] in which several of the Defendants had existing interests. ¶ 162 Prior to the Funds' investment in Hills, Lee Co. owned 19.1% of Hills common stock ¶ 105, and Lee owned 45.9% of one series and 60% of another series of the preferred stock of Hills Stores, a wholly owned subsidiary of Hills ¶ 110. Lee served as director of both Hills and Hills

3. On May 14, 1992, following an order of the Court to consolidate, the Plaintiffs filed a Consolidated Amended Complaint.

4. 15 U.S.C. §§ 77k, 77*l*(2), and 77*o*.

5. 15 U.S.C. §§ 78j(b) and 78t.

6. 17 C.F.R. 10b-5.

7. 15 U.S.C. §§ 80a-17(j), 80a-35, 80a-47, 80a-56.

8. 17 C.F.R. § 270.17j-1.

9. Mezzanine securities "consist primarily of subordinated debt and/or preferred stock combined with an equity participation known as an equity kicker." ¶ 7. Managed companies were to be "companies to which the Funds would provide significant managerial assistance after the investment." ¶ 8.

10. Due to increasing debt, and other reasons, Hills suffered financially. The value of Hills' common stock decreased in value from April 1988 to February 1990 from approximately $10.75 per share to $4.00 per share.

Stores between 1985 and December 31, 1991. ¶ 111 [11]

At the time of the Funds' investment in Hills, Advisors II did not make a contemporaneous investment in Hills. ¶ 153 Defendants failed to obtain exemptive orders from the S.E.C. as Plaintiffs assert they were required under section 57 of the Investment Company Act. ¶ 163

Hills filed for protection under Chapter 11 of the Bankruptcy Code within one year of the investment of the Funds investment in Hills. ¶ 168 The Funds' 1990 Annual Report (issued April 1, 1991) disclosed the investment and its lack of success. ¶ 169

On April 6, 1990, the Funds purchased an interest in Petco Corporation, another financially ailing corporation in which certain Defendants had preexisting interests. ¶ 185 Following a leveraged buyout transaction in July 1988, Defendant Lee Co. controlled Petco Holding Corporation ("PHC"), which in turn controlled Petco. ¶ 171 Lee Co. also controlled Funds I. By March 5, 1990, Lee Co. and Funds I controlled 35.9% of PHC's common stock. ¶ 179 On April 5, 1990, Drexel, or persons affiliated with Drexel owned approximately 7.6% of Petco's common stock or warrants to purchase Petco's common stock. ¶ 188

On April 6, 1990, Defendants caused the Funds to purchase (at 70% of face value) $500,000 worth of Petco 15.5% Extendable Notes from Drexel. ¶ 185 [12] Defendants failed to obtain necessary exemptive orders from the S.E.C. as required under section 57 of the Investment Company Act. ¶ 186 Neither Advisors II nor its affiliates made contemporaneous investments as required under the Prospectus. ¶ 186

On November 16, 1990, the Defendants approved a further investment of approximately $459,000 in Petco 14% Subordinated Bridge Notes due March 1, 1991. ¶ 193 Again, Defendants failed to obtain exemptive orders from the S.E.C. ¶ 194

On April 19, 1991, the Defendants caused an additional investment of approximately $379,000 to be made in Petco Bridge Notes. ¶ 196 Defendants again failed to obtain necessary exemptive orders from the S.E.C. as allegedly required under section 57 of the Investment Company Act. ¶ 197

As of January 17, 1989, Lee Co. and Funds I controlled a corporation called Stanley Holding Corporation ("SHC"), a subsidiary of which was Stanley Corporation ("Stanley"). ¶ 199–200 At some time prior to July 5, 1991, the Defendants caused the Funds to invest $523,673 in 10% Stanley Preferred Stock. ¶ 203 On July 5, 1991, the Funds and SHC purchased Stanley 10% Preferred Stock at the same price and in approximately the same amounts from Nortek, Inc. ¶ 204 At the same time the Funds sold a nine month option to SHC on the block of Stanley 10% Preferred Stock for 5% of the purchase price of the stock. ¶ 204

SHC and the Funds were under the common control of Lee, and thus SHC was related to the Funds under the Investment Company Act. ¶ 205. Defendants obtained an exemptive order from the SEC as required under section 57 of the Investment Company Act. ¶ 205 However, according to the Plaintiffs, the transaction engaged in went beyond the terms of the application for the exemptive order, which related only to an equity coinvestment. ¶ 205

Plaintiffs allege that the purchase of the option also required an exemptive order by virtue of the relationship between SHC, Lee and the Funds, and that no such order was obtained. ¶ 206 The Funds' 1991 Form 10–K statement filed on March 30, 1992 stated that the Funds had ceased accruing income from the investment in Stanley due to "unrealized depreciation." ¶ 207

Plaintiffs finally allege that each of the described investments in Hills, Petco and Stanley violated the terms of the Prospectus

11. At a meeting regarding the proposed investment of Funds in Hills, attorneys from H & W stated with respect to the potential conflict of interest in investing in a company affiliated with Lee, that "because the amounts were nominal, it did not present a significant conflict." ¶ 152

12. HW & D was present at a March 19, 1990 meeting of the Funds' general partners and Advisors II in which the investments were approved.

as well as the guidelines set out for the investments of the Funds. ¶ 209

### A. *The Original Defendants' ("Defendants") Motion to Dismiss*

Defendants offer three arguments in support of their motion to dismiss Plaintiffs' federal securities law claims. First, Defendants contend that the complaint should be dismissed for failure to plead compliance with the applicable limitations period. Second, Defendants aver there is no implied private action based upon "controlling person" or "aider and abettor" liability under the Investment Company Act. Third, the Defendants assert that the allegations of the Complaint fail to allege primary violations of either Section 17(j) of the Investment Company Act or Rule 17j–1 promulgated thereunder. In addition, because the federal causes of action are subject to dismissal before trial, Defendants urge the Court to also dismiss the supplemental state law claims.

In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must consider as true all facts alleged by plaintiff. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

#### 1. *Private Rights of Action under Investment Company Act*

Plaintiffs assert claims under sections 17(j), 36, 48 and 57 of the Investment Company Act and Rule 17j–1 [13] promulgated pursuant to section 17(j). Defendants contend, and Plaintiffs concede, that no explicit private right of action exists under any of these provisions. Defendants argue that the Court should not find that any implied private rights of action exist.

##### a. *Implied Rights of Action*

■ In absence of explicit congressional authorization for permitting a private right of action where it appears that Congress intended for a private right of action to exist. *See Karahalios v. National Federation of Federal Employees, Local 1263,* 489 U.S. 527, 532–33, 109 S.Ct. 1282, 1286–87, 103 L.Ed.2d 539 (1989).

> Unless such "congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." It is also an "elemental canon" of statutory construction that where a statute expressly provides a remedy, courts must be especially reluctant to provide "additional remedies."

*Id.* (quoting *Thompson v. Thompson,* 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988)). (citation omitted).

In this regard, there is one express private right of action under the Investment Company Act. In the Investment Company Amendments Act of 1970, Pub.L. No. 91–547, 84 Stat. 1413, Congress added section 36(b). Section 36(b) provides for a private right of action by a security holder against the investment adviser "with respect to the receipt of compensation for services, or payments of a material nature" for a breach of the adviser's fiduciary duty. 15 U.S.C. § 80a–35(b); *see also Tannenbaum v. Zeller,* 552 F.2d 402, 416–17 (2d Cir.), *cert. denied,* 434 U.S. 934, 98 S.Ct. 421, 54 L.Ed.2d 293 (1977); *Bancroft Convertible Fund, Inc. v. Zico Invest. Holdings, Inc.,* 825 F.2d 731, 735 (3d Cir.1987).

Congress again amended the Investment Company Act in 1980 in the Small Business Investment Incentive Act of 1980, Pub.L. No. 96–477, 94 Stat. 2275 (1980). The House Report on Pub.L. No. 96–477 states, in pertinent part:

> The rationale for implying private rights of action under the securities laws beyond those actions expressly provided for had been well articulated by the Supreme Court when it observed that implied private rights of action allowing shareholders to sue to remedy their losses would significantly assist the congressional goal of promoting fair corporate suffrage. But in recent years, the Supreme court turned its focus toward a strict construction of statutory language and expressed intent.
>
> The Committee wishes to make plain that it expects the courts to imply private rights of action under this legislation,

13. 7 C.F.R. § 270.17j–1.

where the plaintiff falls within the class of persons protected by the statutory provision in question. Such a right would be consistent with and further Congress' intent in enacting that provision, and where such actions would not improperly occupy an area traditionally the concern of state law. In appropriate instances, for example, breaches of fiduciary duty involving personal misconduct should be remedied under Section 36(a) of the Investment Company Act. With respect to business development companies, the Committee contemplates suits by shareholders as well as by the Commission, since these are the persons the provision is designed to protect, and such private rights of action will assist in carrying out the remedial purposes of Section 36.

H.R.Rep. No. 1341, 96th Cong., 2d Sess. 28–29 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4800, 4810–11 (footnotes omitted) (quoted in *Bancroft Convertible Fund,* 825 F.2d at 735–36).

The United States Court of Appeals for the Third Circuit observed that "[c]learly, the Committee Report expressly approves the position of those courts which, following the 1970 amendments, held that private causes of action should be implied from the Investment Company Act." *Bancroft Convertible Fund,* 825 F.2d at 736. Given the stated intent of Congress, the Third Circuit held that a private right of action existed under section 12(d)(1)(A) of the Investment Company Act. *Id.* "Section 12(d)(1)(A) of the Investment Company Act prohibits an investment company from acquiring more than three percent of the outstanding voting stock of another investment company." *Id.* at 733. The Third Circuit was unpersuaded by the argument that a private cause of action should not be implied because prior to the congressional amendments there had been no case law suggesting the existence of a private cause of action under that section of the Investment Company Act. *Id.*

Furthermore, the Third Circuit stated that the defendant had failed to make a persuasive argument suggesting congressional intent to treat the conduct proscribed under section 12(d)(1)(A) any differently for the purpose of private enforcement than any of the prohibitions in the Investment Company Act that were designed to protect investors. *Id. see also Lessler v. Little,* 857 F.2d 866 (1st Cir.1988) (recognizing private cause of action under section 17(a)(2) of the Investment Company Act which prohibits investment advisers of registered investment companies and affiliates of the investment advisers from purchasing assets of that registered investment company), *cert. denied,* 489 U.S. 1016, 109 S.Ct. 1130, 103 L.Ed.2d 192 (1989); *Fogel v. Chestnutt,* 668 F.2d 100 (2d Cir. 1981) (recognizing implied rights of action for damages under section 36(a) of Investment Company Act where advisers or directors breach fiduciary duty), *cert. denied,* 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982); *Meyer v. Oppenheimer Management Corp.,* 764 F.2d 76, 86–88 (2d Cir.1985) (implying private right of action under section 15(f) of Investment Company Act); *Krome v. Merrill Lynch & Co.,* 637 F.Supp. 910 (implying private rights of action under sections 10(b), 15(a–b), 17(a), 22, 34(a), and 36 of the Investment Company Act), *vacated in part,* 110 F.R.D. 693 (S.D.N.Y.1986); *Jerozal v. Cash Reserve Management, Inc.,* 1982 WL 1363 (S.D.N.Y.1982) (implying private rights of action under sections 15, 35(b), 47(a) of the Investment Company Act); *Cambridge Fund, Inc. v. Abella,* 501 F.Supp. 598, 622–23 (S.D.N.Y.1980) (implying private right of action under 36(a) and 37 of the Investment Company Act).

It is clear from the foregoing discussion that Congress intended, in appropriate circumstances, for courts to imply private rights of action under the Investment Company Act, and that courts have consistently recognized such private rights of action. What remains to be determined is whether the circumstances in this case are such that the Court should imply private rights under the particular sections upon which Plaintiffs rely in the Complaint. To make this determination, the Court must ascertain whether "the plaintiff falls within the class of persons protected by the statutory right in question." *Bancroft Convertible Fund,* 825 F.2d at 736 (quoting H.R.Rep. No. 1341, 96th Cong., 2d Sess. 28–29 (1980), *reprinted in* 1980

U.S.C.C.A.N. 4811). Once the Court decides whether private rights of action should be implied under the sections that Plaintiffs have alleged Defendants violated, the Court will consider the question of whether Plaintiffs can proceed against Defendants under Plaintiffs' theories of primary and secondary liability.

### *b. Section 17(j) of the Investment Company Act*

In Count VIII of the Complaint, Plaintiffs assert a claim against Defendants for violations of section 17(j) of the Investment Company Act and Rule 17j–1 promulgated thereunder. This Count relates to the Hills and Stanley transactions. The Complaint alleges that defendant Lee is primarily liable based upon his control over Funds, Hills and SHC for Hill's and SHC's allegedly fraudulent, deceitful or manipulative acts or practices with respect to their transactions with the Funds. The Complaint also alleges that all other Defendants are secondarily liable as aiders and abettors with respect to the Hills transaction, and all Defendants except Lee and HW & D are secondarily liable as aiders and abettors with respect to the Stanley transaction.

Section 17(j) [14] essentially prohibits persons affiliated with a registered investment

14. 15 U.S.C. § 80a–17j provides, in pertinent part:

It shall be unlawful for any affiliated person of or principal underwriter for a registered investment company or any affiliated person of an investment advisor of or principal underwriter for a registered investment company, to engage in any act, practice, or sale, directly or indirectly, by such person of any security held or to be acquired by such registered investment company in contravention of such rules and regulations as the Commission may adopt to define, and prescribe means reasonably necessary to prevent, such acts, practices, or courses of business as are fraudulent, deceptive or manipulative. Such rules and regulations may include requirements for the adoption of codes of ethics by registered investment companies and investment advisers of, and principal underwriters for, such investment companies establishing such standards as are reasonably necessary to prevent such acts, practices, or courses of business.

Rule 17j provides, in pertinent part:

270.17j–1 Certain unlawful acts, practices, or courses of business and requirements relating to codes of ethics with respect to registered investment companies.

(a) It shall be unlawful for any affiliated person of or principal underwriter for a registered investment company, or any affiliated person of an investment adviser of or principal underwriter for a registered investment company in connection with the purchase or sale, directly or indirectly, by such person of a security held or to be acquired, as defined in this section, by such registered investment company:

(1) To employ any device, scheme or artifice to defraud such registered investment company;

(2) To make to such registered investment company any untrue statement of a material fact or omit to state to such registered investment company a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading;

(3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any such registered investment company; or

(4) To engage in any manipulative practice with respect to such registered investment company.

(b)(1) Every registered investment company, and each investment adviser of or principal underwriter for such investment company, shall adopt a written code of ethics containing provisions reasonably necessary to prevent its access persons from engaging in any act, practice, or course of business prohibited by paragraph (a) of this section and shall use reasonable diligence, and institute procedures reasonably necessary, to prevent violations of such code.

(2) The requirements of paragraph (b)(1) shall not apply to any underwriter (i) which is not an affiliated person of the registered investment company or its investment adviser, and (ii) none of whose officers, directors or general partners serves as an officer, director or general partner of such registered investment company or investment adviser.

. . . . .

(e) As used in this rule

(1) "Access person" means:

(i) With respect to a registered investment company or an investment adviser thereof, any director, officer, general partner, or advisory person, as defined in this section, of such investment company or investment adviser;

(ii) With respect to a principal underwriter, any director, officer, or general partner of such principal underwriter who in the ordinary course of his business makes, participates in or obtains information regarding the purchase or sale of securities for the registered investment company for which the principal underwriter so acts or whose functions or duties as part of the ordinary course of his business relate to the making of any recommendation to such invest-

company from engaging in fraudulent, deceptive, or manipulative acts or practices in connection with the purchases or sales of securities held or to be acquired by an investment company. On the record before it, the Court finds that Plaintiffs, as limited partners in the Funds, are within the class of persons to be protected by section 17(j). No reported decision relating specifically to section 17(j) has been found. However, other courts have implied private rights of action under other subsections of 15 U.S.C. § 80a–17. *See Lessler v. Little,* 857 F.2d at 873 (implied private right of action under 15 U.S.C. 80a–17(a)(2)); *Krome,* 637 F.Supp. at 919 (implied private right of action under 15 U.S.C. § 80a–17(a)). Thus, the Court concludes that an implied private right of action exists under section 17(j). Accordingly, the Court finds that Count VIII states a cognizable cause of action against defendant Lee. The Court will address the potential liability of the remaining Defendants in its discussion of aider and abettor liability.

### c. *Section 36(a) of the Investment Company Act*

Plaintiffs, in Count VII, allege a claim against all Defendants for a violation of section 36(a) of the Investment Company Act.[15]

ment company regarding the purchase or sale of securities.

. . . . .

(3) "Control" shall have the same meaning as that set forth in section 2(a)(9) of the Act [15 U.S.C. 80a–2(a)(9)].

(4) "Purchase or sale of a security" includes, inter alia, the writing of an option to purchase or sell a security.

. . . . .

(6) "Security held or to be acquired" by a registered investment company means any security as defined in this rule which, within the most recent 15 days, (i) is or has been held by such company, or (ii) is being or has been considered by such company or its investment adviser for purchase by such company.

15. 15 U.S.C. § 80a–35 provides, in pertinent part:

**Breach of fiduciary duty**

(a) Civil actions by Commission; jurisdiction; allegations; injunctive or other relief. The Commission is authorized to bring an action in the proper district court of the United States, or in the United States court of any territory or other place subject to the jurisdiction of the United States, alleging that a person serving or acting in one or more of the following capacities has engaged within five years of the commencement of the action or is about to engage in any act or practice constituting a breach of fiduciary duty involving personal misconduct in respect of any registered investment company for which such person so serves or acts—

(1) as officer, director, member of any advisory board, investment adviser, or depositor; or

(2) as principal underwriter, if such registered company is an open-end company, unit investment trust, or face-amount certificate company.

If such allegations are established, the court may enjoin such persons from acting in any or all such capacities either permanently or temporarily and award such injunctive or other relief against such person as may be reasonable and appropriate in the circumstances, having due regard to the protection of investors and to the effectuation of the policies declared in section 1(b) of this title [15 U.S.C. § 80a–1(b)].

(b) Compensation or payments as basis of fiduciary duty; civil actions by Commission or security holder; burden of proof; judicial consideration of director or shareholder approval; persons liable; extent of liability; exempted transactions; jurisdiction; finding restriction. For the purposes of this subsection, the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser. An action may be brought under this subsection by the Commission, or by a security holder of such registered investment company on behalf of such company, against such investment adviser, or any affiliated person of such investment adviser, or any other person enumerated in subsection (a) of this section who has a fiduciary duty concerning such compensation or payments, for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person. With respect to any such action the following provisions shall apply:

(1) It shall not be necessary to allege or prove that any defendant engaged in personal misconduct, and the plaintiff shall have the burden of proving a breach of fiduciary duty.

(2) In any such action approval by the board of directors of such investment company of such compensation or payments, or of contracts or other arrangements providing for such compensation or payments, and ratification or approval of such compensation or payments, or of contracts or other arrangements providing for such compensation or payments, by the shareholders of such investment company, shall be given such consideration by the court as is deemed appropriate under all the circumstances.

(3) No such action shall be brought or maintained against any person other than the recipi-

This Count alleges that Lee, Mezzanine Investments, Alden, Bower, and Feldberg, as directors or officers of the Funds, and Advisors II, as the investment adviser to Funds, committed primary violations of section 36(a). These Defendants allegedly breached their fiduciary duties to the investors by: (1) approving the Funds' investments in Hills, Petco and Stanley without obtaining necessary exemptive orders; (2) approving a non-guideline investment in Hills without obtaining approval of a majority of disinterested directors; (3) engaging in self-dealing by investing in the financially ailing Hills, Petco and Stanley in which Defendants or their affiliates had existing investments; and (4) withholding information in the Prospectus concerning their intent to invest in financially ailing enterprises in which the Defendants held substantial interests.

As discussed above, Congress explicitly created a private right of action under section 36(b) for breaches of fiduciary duty with respect to a registered investment company. The private cause of action explicitly included in section 36(b), however, is limited only to claims relating to the compensation or payment paid to officers, directors, members of any advisory boards, and principal underwriters of the investment company who breach their fiduciary duties to the investment company.

Nonetheless, House Report No. 1341 accompanying the 1980 amendments to the Investment Company Act makes clear in its discussion of private rights of action that Congress intended that "in appropriate instances, for example, breaches of fiduciary duty involving personal misconduct should be remedied under Section 36(a) of the Investment Company Act." H.R.Rep. No. 1341, 96th Cong., 2d Sess. 28–29 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4810–11 (footnotes omitted) (quoted in *Bancroft Convertible Fund,* 825 F.2d at 735–36). Thus, the Court believes Congress intended courts to continue to imply private rights of action for conduct proscribed under section 36(a). Therefore, insofar as Count VII of the Complaint contains allegations of breaches of fiduciary duties by Lee, Mezzanine Investments, Alden, Bower, and Feldberg, as directors or officers of Funds, and Advisors II, as the investment adviser to Funds, Plaintiffs have stated a cognizable cause of action.

The remaining Defendants (Lee Co., Lee II, Merrill, MLPF & S, Mezzanine, Mezzanine Individual Defendants, Administrators, HW & D, and Funds) are alleged to be secondarily liable as aiders and abettors. Again, the Court will address their potential liability in the section discussing aider and abettor liability.

### *d. Section 57 of the Investment Company Act, 15 U.S.C. § 80a–56*

In Counts IV–VI Plaintiffs assert claims against all Defendants for violations of sections 57(a)(1–2), 57(a)(4) and 57(d) of the Investment Company Act. These Counts relate to the failure of Defendants to obtain the requisite exemptive orders from the SEC prior to engaging in the challenged transactions.

#### (1) *Count IV—Sections 57(a)(1) & (2)*

Plaintiffs' theory in Count IV is that Funds were related to Hills, Petco and Stanley by virtue of the common control of Lee and other Defendants over the Funds and Hills, Petco and Stanley. Plaintiffs allege that exemptive orders were required under section 57(a)(1), (2) [16] because the Funds were related to Hills, Petco and Stanley.

ent of such compensation or payments, and no damages or other relief shall be granted against any person other than the recipient of such compensation or payments. No award of damages shall be recoverable for any period prior to one year before the action was instituted. Any award of damages against such recipient shall be limited to the actual damages resulting from the breach of fiduciary duty and shall in no event exceed the amount of compensation or payments received from such investment company, or the security holders thereof, by such recipient.

**16.** 15 U.S.C. § 80a–56(a)(1–2) provides as follows:

**Transactions involving controlling or closely affiliated persons**

(a) It shall be unlawful for any person who is related to a business development company in a manner described in subsection (b) of this section, acting as principal—

(1) knowingly to sell any security or other property to such business development company or to any company controlled by such business development company, unless such sale involves

In Count IV, Plaintiffs challenge the Hills transactions on the grounds that, because Hills and the Funds were related, either Hills or the Funds were required to obtain exemptive orders before Hills could sell its securities to the Funds. Plaintiffs allege that defendant Lee is primarily liable due to his control over both the Funds and Hills. All other Defendants are alleged to be secondarily liable due to their relationship to either Hills or the Funds. HW & D is allegedly liable due to its assistance in consummating the Hills transactions with the knowledge of Lee's control over both the Funds and Hills.

With respect to Petco, Count IV alleges that the Petco transactions were accomplished without obtaining the requisite exemptive orders. Plaintiffs attack all three investments in Petco securities, all of which were consummated without obtaining exemptive orders from the SEC. Plaintiffs allege that Petco and the Funds were related because Lee controlled both Petco and the Funds.

Plaintiffs attack the first Petco transaction (the April 6, 1990 transaction with Drexel), alleging that, because Drexel controlled Petco and Petco and the Funds were related, Drexel was related to the Funds. Plaintiffs therefore allege that either Drexel or the Funds were required to obtain exemptive orders before Drexel could sell the Petco securities to the Funds. Plaintiffs allege that all Defendants, because of their respective relationships with the Funds, each other, and Petco, and because of their assistance in consummating the sale, are secondarily liable with respect to the sale of the Petco securities by Drexel to the Funds without the requisite exemptive orders.

With regard to the second and third Petco transactions (the November 16, 1990 and April 19, 1991 sale of Bridge Notes), Plaintiffs allege that either Petco or the Funds were required to obtain exemptive orders from the SEC. Plaintiffs allege that Defendants Lee, Lee Co., IGPs, Merrill, MLPF & S, and the Individual Defendants, because of their control over the Funds, Fund I and Petco, are primarily liable for failing to obtain the requisite exemptive orders. Plaintiffs allege that Defendants Lee II, Advisors II, Mezzanine Investments, Mezzanine, Administrators, and HW & D are secondarily liable with respect to the failure to obtain the requisite exemptive orders by virtue of their relationships to Petco and the Funds and their assistance in consummating the sale.

Plaintiffs also attack the Stanley transaction for the failure to obtain an exemptive order. Plaintiffs allege that Defendants Lee, Lee Co., the IGPs, Merrill, MLPF & S and the Individual Defendants controlled Fund I, SHC, and the Funds. Plaintiffs allege, therefore, that the Funds and SHC were related. Because SHC and the Funds were related, Plaintiffs allege that SHC or the Funds were required to obtain an exemptive order from the S.E.C. prior to the Funds selling SHC the option to buy the Stanley 10% Preferred Stock. "In purchasing the option to buy the Stanley 10% Preferred Stock from the Funds without the requisite exemptive order, SHC violated § 57(a)(2)." ¶ 257. Plaintiffs allege that Defendants Lee,

solely (A) securities of which the buyer is the issuer, or (B) securities of which the seller is the issuer and which are part of a general offering to the holders of a class of its securities;

(2) knowingly to purchase from such business development company or from any company controlled by such business development company, any security or other property (except securities of which the seller is the issuer);

15 U.S.C. § 80a–56(b) provides as follows:

**Controlling or closely affiliated persons**

(b) The provisions of subsection (a) of this section shall apply to the following persons:

(1) Any director, officer, employee, or member of an advisory board of a business development company or any person (other than the business development company itself) who is, within the meaning of section 80a–2(a)(3)(C) of this title, an affiliated person of any such person specified in this paragraph.

(2) Any investment adviser or promoter of, general partner in, principal underwriter for, or person directly or indirectly either controlling, controlled by, or under common control with, a business development company (except the business development company itself and any person who, if it were not directly or indirectly controlled by the business development company, would not be directly or indirectly under the control of a person who controls the business development company), or any person who is, within the meaning of section 80a–2(a)(3)(C) or (D) of this title, an affiliated person of any such person specified in this paragraph.

Lee Co., the IGPs, Merrill, MLPF & S and the Individual Defendants are primarily liable due to their control over SHC. Plaintiffs allege that Defendants Lee II, Advisors II, Mezzanine Investments, Mezzanine, and Administrators are secondarily liable with respect to the failure to obtain the requisite exemptive orders by virtue of their relationships to SHC and the Funds and their assistance in consummating the sale.

(2) *Count V—Section 57(a)(4)*

In Count V of the Complaint, Plaintiffs allege that an exemptive order was also required under section 57(c) and Rule 17d–1 promulgated under section 17 of the Investment Company Act to effect the Stanley transaction. Plaintiffs allege that the failure to obtain the requisite exemptive order violated section 57(a)(4).

Plaintiffs allege that Defendants Lee, Lee. Co., the IGPs, Merrill, MLPF & S and the Individual Defendants are primarily liable based upon their control of SHC. Plaintiffs allege that Defendants Lee II, Advisors II, Mezzanine Investments, Mezzanine, Administrators, by virtue of their control of the Funds are secondarily liable with respect to the failure to obtain the exemptive orders necessary to engage in the joint transaction with Stanley.

(3) *Count VI—Section 57(d)*

In Count VI, Plaintiffs allege that if the Hills transaction did not require an exemptive order under section 57(a)(1), then it required an exemptive order under section 57(d). Plaintiffs allege that the Hills transaction required an exemptive order under section 57(d) for the following reasons: the transaction was not approved by a majority of disinterested general partners (allegedly there were none); the terms of the transaction were not reasonable and fair to the partners of the Funds; the investment involved overreaching on the part of the Funds; the transaction was inconsistent with the policy of the Funds as expressed in its SEC filings; the general partners failed to record in the minutes of the Funds their findings concerning the transaction.

Plaintiffs allege that defendant Lee, due to his control over Hills, is primarily liable for the failure to obtain the section 57(d) exemptive order. Plaintiffs also allege that Defendants Alden, Bower, and Feldberg are primarily liable because they held an interest in Hills. Plaintiffs allege that all other Defendants are secondarily liable for aiding and abetting the consummation of the Hills transaction without obtaining the necessary exemptive orders.

Section 57 of the Investment Company Act was added by Congress in 1980 as part of the Small Business Investment Act. *See* Pub.L. No. 96–477 § 57, 94 Stat. 2280. Section 57 parallels section 17 of the Investment Company Act and it

> generally prohibits business development companies from effecting or participating in certain transactions in which conflicts of interest might be present, unless explicit procedures are satisfied. The protective system which is established by the bill is similar to that applicable to registered investment companies under section 17 of the Act, and rules thereunder, but is modified to address concerns relating to unique characteristics presented by business development companies.

H.Rep. No. 96–1341, 96th Cong., 2d Sess. 45 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4827. The House Committee on Interstate and Foreign Commerce noted in their report concerning section 57 that "[t]he prohibitions contained in sections 57(a) and (d) are similar to those found in sections 17(a) and 17(d) of the Act." *Id.* There can be no question that Congress intended for section 57 and section 17 to be construed similarly because Congress expressly included in section 57 a provision stating that the rules and regulations promulgated by the SEC pursuant to section 17 were to apply to sections 57(a) and (d) until the SEC adopts rules and regulations pursuant to section 57. *See* 15 U.S.C. § 80a–56(i).

Given that section 57 is analogous to section 17 and the Court has concluded that a private right of action exists under section 17, it is consistent for the Court to conclude that a private right of action exists under section 57. The Court also notes that the House Report quoted above, which accompanied the enactment of section 57 specifically

stated that "[w]ith respect to business development companies, the Committee contemplates suits by shareholders as well as by the Commission." H.R.Rep. No. 1341, 96th Cong., 2d Sess. 29 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4811 (footnotes omitted) (quoted in *Bancroft Convertible Fund,* 825 F.2d at 735–36). Further, the nature and purpose of sections 57(a) and (d) support finding a private right of action. These sections protect investors in business development companies by ensuring that the SEC act as a watchdog over transactions between the business development companies and its affiliates. By failing to obtain the requisite exemptive orders, affiliated persons avoid making public their questionable transactions, and thus avoid alerting both the SEC and their investors about such transactions. For these reasons, the Court concludes that a private right of action exists under sections 57(a) and (d).

### 2. *Primary Liability as "Controlling Persons"*

Plaintiffs allege that various Defendants are liable as primary violators of sections 17 and 57 on the basis of their ability to control or influence Hills, Petco, and Stanley. Plaintiffs contend that such liability exists under the Investment Company Act on the basis of both section 2(a)(9) which defines "control" and section 48 which applies to "Procuring violation[s]" of the Investment Company Act.

Section 2(a)(9) provides in pertinent part:

> "Control" means the power to exercise a controlling influence over the management or policies of a company, unless such power is solely the result of an official position with such company.
>
> Any person who owns beneficially, either directly or through one or more controlled companies, more than 25 per centum of the voting securities of a company shall be presumed to control such company. Any person who does not so own more than 25 per centum of the voting securities of any company shall be presumed not to control such company. A natural person shall be presumed not to be a controlled person within the meaning of this subchapter.

15 U.S.C. § 80a–2(a)(9). Defendants appropriately note that section 2(a)(9) is merely a definition, and not the basis for imposing liability. The Court agrees.

However, the Court concludes that section 48 can provide a basis for imposing liability. *See Jerozal v. Cash Reserve Management, Inc.,* 1982 WL 1363 at *6 (S.D.N.Y. August 10, 1982) (finding cause of action under section 48(a) against various controlling or dominating directors of investment fund). Section 48 of the Investment Company Act provides in pertinent part:

> **Procuring violation of subchapter; obstructing compliance**
>
> (a) It shall be unlawful for any person, directly or indirectly, to cause to be done any act or thing through or by means of any other person which it would be unlawful for such person to do under the provisions of this subchapter or any rule, regulation, or order thereunder.

15 U.S.C. § 80a–47. While the Defendants contend that section 48 is materially distinguishable from section 20(a) of the 1934 Act, which was a basis for the *Jerozal* court's determination that section 48(a) was a basis for controlling person liability, the Court concludes that a proper reading of section 48(a) supports finding such liability. Section 48(a) proscribes any actions taken "to cause" another to take actions that are unlawful under the Investment Company Act. Thus, insofar as Plaintiffs allege that the transactions at issue in the Complaint were undertaken illegally between "affiliated" entities and that the alleged controlling Defendants caused those actions to be taken, the Court concludes those controlling Defendants can possibly be held accountable under section 48(a).

### 3. *Aider and Abettor Liability Under the Investment Company Act*

Plaintiffs seek to proceed against several of the Defendants under a theory of secondary liability for aiding and abetting violations of the Investment Company Act by other Defendants who are primarily liable. Defendants contend that, assuming this Court were to find a private right of action under the sections Plaintiffs allege the Defendants violated, the Court should limit such

liability in the same manner that Congress limited the one expressly recognized private right of action in the Investment Company Act, found at 15 U.S.C. § 80a–35(b) ("Section 36(b)"). Section 36(b) states, in pertinent part, that "No such action ... shall be brought or maintained against any person other than the recipient of such compensation or payments, and no damages or other relief shall be granted against any person other than the recipient of such compensation or payments." 15 U.S.C. § 80a–35(b)(3).

Plaintiffs respond by asserting that the 1970 Senate Report on the amendments adding the private right of action in section 36(b) "indicates that the specific provisions of subsection (b) 'should not be read by implication to affect subsection (a).'" (D.I. 276 at 36 (quoting S.Rep. No. 91–184, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.C.C.A.N. 4897, 4911). Plaintiffs' out of context quotation is unpersuasive. The complete sentence in the report is as follows: "Although section 36(b) provides for an equitable action for breach of fiduciary duty as does section 36(a), the fact that subsection (b) specifically provides for a private right of action should not be read by implication to affect subsection (a)." S.Rep. No. 91–184, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.C.C.A.N. 4897, 4911).

At best, the Court finds the above-quoted sentence to be ambiguous. It might be interpreted as expressing the intent of Congress to preclude private equitable actions for breaches of fiduciary duty under section 36(a). On the other hand, it might reasonably be interpreted as instructing courts to feel free to impose private rights of action, notwithstanding Congress' failure to explicitly provide for one. Thus, what might reasonably be read as a statement limiting private actions under section 36(a), has been quoted by Plaintiffs to support a theory that increases the scope of private actions under section 36(a).

Moreover, as Defendants note, Congress has created liability for civil penalties for aiding and abetting violations of the Investment Company Act under Section 9 of the Investment Company Act, which exclusively involves SEC administrative proceedings.[17] The aiding and abetting section was added as part of the 1970 amendments, but the remedy initially was limited to removing or prohibiting violators from serving as employees or persons of influence in investment companies or affiliates of the investment advisers, depositors or principal underwriters of investment companies. *See* Pub.L. No. 91–547 § 4(b), 84 Stat. 1416. It was not until 1990 that Congress added provisions permitting the SEC to impose civil monetary penalties against aiders and abettors. Pub.L. No. 101–429 § 301(1, 3), 104 Stat. 941–45. Congress expressly stated that such civil monetary penalties could not be imposed for violations pre-dating the effective date of the 1990 amendments—October 15, 1990. *See* Pub.L. No. 101–429, § 1(c), 104 Stat. 931.

**17.** Section 9(b) provides, in pertinent part:

**Certain persons serving investment companies; administrative action of Commission**

The Commission may, after notice and opportunity for hearing, by order prohibit, conditionally or unconditionally, either permanently or for such period of time as it in its discretion shall deem appropriate in the public interest, any person from serving or acting as an employee, officer, director, member of an advisory board, investment adviser or depositor of, or principal underwriter for, a registered investment company or affiliated person of such investment adviser, depositor, or principal underwriter, if such person—

. . . . .

(3) has willfully aided, abetted, counseled, commanded, induced, or procured the violation by any other person of the Securities Act of 1933, or of the Securities Exchange Act of 1934, or of subchapter II of this chapter, or of this subchapter, or of the Commodity Exchange Act, or of any rule or regulation under any of such statutes. 15 U.S.C. § 80a–9(b)(3).

Section 9(d) provides, in pertinent part:

**Money penalties in administrative proceedings**

**(1) Authority of Commission**

In any proceedings instituted pursuant to subsection (b) of this section against any person, the Commission may impose a civil penalty if it finds, on the record after notice and opportunity for hearing, that such person—

. . . . .

(B) has willfully aided, abetted, counseled, commanded, induced, or procured such a violation by any other person;

. . . . . .

and that such penalty is in the public interest. 15 U.S.C. § 80a–9(d)(1).

Plaintiffs rely upon *Wellman v. Dickinson,* 475 F.Supp. 783, 834 (S.D.N.Y.1979), *aff'd,* 682 F.2d 355 (2d Cir.1982), *cert. denied,* 460 U.S. 1069, 103 S.Ct. 1522, 75 L.Ed.2d 946 (1983), to support their theory that private actions for violations of the Investment Company Act can be brought on a theory of aider and abettor liability. In *Wellman,* a consolidated action involving the SEC and private plaintiffs, the United States District Court for the Southern District of New York found aiding and abetting liability under the section 17(d) and 17(e) of the Investment Company Act. As Defendants correctly note, however, the District Court was applying aiding and abetting liability in the SEC enforcement action only. *Id.* at 791–95. In fact, the Court is aware of no decision in which a court has found that a private right of action exists under the Investment Company Act on the basis of aiding and abetting liability.

Nor does the specific text of the provisions at issue support finding a private cause of acting against aiders and abettors of violations of the Investment Company Act. Section 17(j) is specifically directed at "any affiliated person or promoter or principal underwriter for a registered investment company, ... or any affiliate person" of those person listed "acting as principal." Section 36(a) specifically limits the persons liable under that section to persons who act as "officer, director, member of any advisory board, investment adviser, or deposited; or ... principal underwriter, if such registered company is an open-end company, unit investment trust, or face-amount certificate company." Section 56 is specifically directed to affiliated persons "acting as principals." Thus, the explicit language of these provisions appears to preclude liability for aiders and abettors.

Moreover, the legislative history of the Investment Company Act and its recent amendments do not support finding a private cause of action against aiders and abettors of violations of the Investment Company Act. Because Congress, prior to 1990, explicitly limited the scope of liability for aiders and abettors to removing or prohibiting them from exercising positions of influence with respect to investment companies, the Court is reluctant to conclude that Congress impliedly intended for courts to imply private rights of actions for money damages against aiders and abettors. Accompanying, the legislation enacting sections 9 and 56 was the above quoted House Report stating Congress' intent that courts should imply private rights of actions. This was at a time when Congress was aware that courts had been consistently finding implied rights of action for primary violations of various provisions of the Investment Company Act. The Court concludes that had Congress intended to expand the scope of liability under private rights of action to include aiders and abettors, Congress would have done so explicitly.

Even more persuasive is Congress' silence with respect to private rights of action when amending Section 9 of the Investment Company Act in 1990 to provide for monetary penalties against aiders and abettors. The Court is equally reluctant to find that because of the 1990 amendments, permitting the SEC for the first time to impose monetary penalties upon aiders and abettors, in which the legislative history contains no expressed opinion about private rights of action, Congress now intends that courts should permit private rights of action for monetary damages against aiders and abettors. Congress' silence with regard to private rights of action in expanding the penalties which the SEC could impose upon aiders and abettors for violations of the Investment Company Act counsels against finding a private right of action against aiders and abettors. Accordingly, Plaintiffs' claims premised on aider and abettor liability will be dismissed.

### 4. *Have Plaintiffs Adequately Alleged a Violation of Rule 17j–1*

Defendants argue that Plaintiffs have failed to establish a violation of section 17(j) and Rule 17j–1. Defendants contend that in order to violate section 17(j) and Rule 17j–1 an affiliated person must purchase or sell a security that is simultaneously held or to be acquired by the investment company, and that Plaintiffs have not alleged any purchase or sale of Hills' or Stanley's securities

by anyone else at the time of the Funds' transactions.

The Complaint alleges that:

> Section 17(j) of the [Investment Company Act] and Rule 17j promulgated thereunder prohibit a person affiliated with a [business development company] from engaging in fraudulent, deceptive, or manipulative acts or practices in connection with the sale or purchase of securities to or from such [business development company].

Complaint, at ¶ 283. The Complaint further alleges that "Hills' sale of its securities to the Funds and SHC's purchase of the stock options from the Funds were acts or practices designed to defraud, deceive, or manipulate the Funds at the expense of limited partners," Complaint, at ¶ 285, and that Lee, by virtue of his control over Hills, SHC, and the Funds, is primarily liable for Hills' and SHC's fraudulent, deceitful, or manipulative acts in related to the Funds' transactions. Complaint, at ¶ 286.

Section 17(j) was added to the 1940 Act in 1970. The legislative history demonstrates that 17(j)'s broad remedial purpose is to develop "adequate restraint on the trading of investment company insiders in the companies' portfolio securities." Investment Company Amendments Act of 1970, S.Rep. No. 91–184, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.Code Cong. & Admin.News 4897, 4923. Paragraph (a) of Rule 17j–1 is a general anti-fraud provision designed to prohibit fraudulent trading by certain persons affiliated with registered investment companies with respect to securities held or to be acquired by the investment company.

Defendants assert that the Court should interpret section 17(j) and Rule 17j–1 as applying only to those situations where an "insider" purchases or sells securities that (a) are already owned by an investment company or (b) are being considered for acquisition by the investment company. Under Defendants' interpretation, a violation of 17(j) requires a distinct securities transaction by an "insider" at a time when such securities were separately held or to be acquired by the Funds. In support of their interpretation of Rule 17j–1, Defendants quote from the SEC's commentary accompanying the promulgation of Rule 17j–1, where the SEC stated "the Commission has become aware of an increasing number of situations involving parallel trading by individuals with knowledge regarding transactions anticipated or engaged in by registered investment companies." *Prevention of Certain Unlawful Activities with Respect to Registered Investment Companies,* Investment Company Act Release No. 11421, [1980 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 82,679 at 83,735.

Plaintiffs argue for a broader reading of Rule 17j–1. Under Plaintiffs' reading, it would be a violation of Rule 17j–1 for an access person, through his/her position of influence, to cause an investment company to purchase or sell securities already owned by that access person, particularly in situations where the access person expects to personally benefit by the investment company's purchase or sale. Plaintiffs quote from the same SEC commentary relied upon by the Defendants.

> Another situation which would appear to present a conflict of interest of the type to which Sectoin [sic] 17(j) is addressed might occur where access persons already own a particular security and through their position of influence over the investment company attempt to cause the investment company to purchase, sell or hold the same security. This situation could be especially abusive where the investment strategy recommended by the access person may be expected to create a personal benefit to the access person.

Investment Company Act Release No. 11421, [1980 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 82,679 at 83,735–36.[18] Because defendant Lee is an access person as defined in Rule 17j–1(e)(1), Plaintiffs contend that the transactions between Hills and Funds and between Stanley and Funds are the types of transactions described by the SEC as pre-

18. Defendants correctly note that the above-quoted paragraph was written in the context of a discussion of what investment companies should appropriately consider in fashioning required codes of ethics.

senting a conflict of interest, and thus violative of section 17(j) and Rule 17j–1.

Although the above quoted portion of the SEC's commentary relates to a discussion of what investment companies should appropriately consider in fashioning required codes of ethics, the Court finds it probative on the issue of what type of conduct constitutes a violation of section 17(j) and Rule 17j–1(a). Given the SEC's reading of section 17(j), the Court finds Plaintiffs' interpretation of section 17(j) at least plausible. Thus, the Court is unable to conclude at this juncture that Plaintiffs would be unable to prove any set of facts which would entitle them to relief. Accordingly, the Court will deny Defendants' motion to dismiss Count VIII for failure to state a claim.

### 5. *Failure to Plead Compliance with Applicable Statutes of Limitations*

Defendants also seek to have Plaintiffs' federal securities law claims dismissed for failure to plead sufficient facts to demonstrate that these claims were filed within the applicable limitations period. At the outset, Defendants contend that the applicable limitations period for all of the federal securities claims—claims under the 1933 Act, the 1934 Act and the Investment Company Act—is one year from the discovery of the cause of action and three years from the accrual of the cause of action. Defendants further argue that compliance with the applicable limitations period is an essential element of Plaintiffs' securities law claims which must be affirmatively pled.

The Complaint was filed more than two years after Plaintiffs purchased their shares in the Funds, approximately one year and ten months after the initial investments in Hills and Petco, approximately one year and three months after the second investment in Petco, less than one year after the third investment in Petco, and approximately seven months after the only investment in Stanley for which a specific date has been alleged.

Plaintiffs counter by first arguing that the applicable limitations period for the Investment Company Act claims is five years. Moreover, Plaintiffs assert that they have pled facts sufficient to satisfy the pleading standard with respect to the one year statute of limitations for the 1933 Act and 1934 Act claims.

Prior to determining whether Plaintiffs have satisfied the pleading standards, the Court will first determine the relevant date for the statute of limitations under the Investment Company Act, the 1933 Act and the 1934 Act.

#### a. *The 1933 and 1934 Acts*

The parties agree that the statute of limitations applicable to Plaintiffs' claims under the 1933 Act and 1934 Act (Counts I, II, and III) is one year from discovery of the alleged violation and three years from the date of the alleged violation. Plaintiffs' 1933 Act and 1934 Act claims relate to the use of a false Registration Statement and Prospectus to solicit sales of Funds' units. The parties also appear to agree that these causes of action accrued in 1989 when the Registration Statement was filed, the Prospectus was published and Plaintiffs purchased their limited partnership units. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, ——, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991) (three year limitations period under section 10(b) commences after alleged misrepresentations). Even assuming that these causes of action accrued on the date of the last possible sale of the Funds' units, January 5, 1990, both Complaints were filed within the three year repose time, but more than one year after the alleged fraudulent conduct occurred.

In *Hill v. Der,* 521 F.Supp. 1370 (D.Del. 1981), the Court outlined the pleading requirements for demonstrating compliance with the statute of limitations. The Complaint

> must set forth [i] the time and circumstances of the discovery of the fraudulent statements, [ii] the reasons why discovery was not made earlier if more than one year has elapsed since the fraudulent conduct occurred, and [iii] the diligent efforts which plaintiff undertook in making or seeking such discovery.

*Id.* at 1389.

Reading the Complaint as a whole, the Court finds that Plaintiffs [19] have sufficiently satisfied their pleading burden under *Hill v. Der.* The Complaint alleges the first date on which investors were alerted of Defendants' alleged wrongful conduct and the circumstances of their discovery with respect to the Hills transaction—April 1, 1991, Complaint at ¶ 169, the Petco transaction—March 30, 1992, Complaint at ¶¶ 195–198, and the Stanley transaction—March 30, 1992, Complaint at ¶ 207.

The Complaint also sets forth the reasons for Plaintiffs' inability to discover the alleged fraud sooner, i.e. misleading Prospectus and Registration statement, in addition to other concealing conduct of the Defendants. For example, the Complaint alleges that the fact that the Funds stopped accruing interest on Petco's debt securities as of January 1991 was omitted from the 1990 Annual Report and not disclosed to the investors until March 30, 1992.

The Court finds these allegations sufficient to overcome a motion to dismiss. As Plaintiffs have sufficiently alleged the circumstances of their discovery in accordance with *Hill v. Der,* the Court will deny Defendants' motion to dismiss Counts I, II, and III.

### *b. Investment Company Act*

The parties disagree as to the appropriate limitations period to be applied to the Investment Company Act claims. Plaintiffs contend that the appropriate limitations period is the five year period found in section 36(a) of the Investment Company Act. Defendants on the other hand, urge the Court to adopt the ⅓ year limitations period applied to the 1933 and 1934 Act claims.[20]

In determining the appropriate limitations period for claims brought pursuant to the Investment Company Act, the Court is guided by the principles set forth in *Lampf,* 501 U.S. 350, 111 S.Ct. 2773. In *Lampf,* the United States Supreme Court set out the analytical steps "for ascertaining the appropriate limitations period for a federal cause of action where Congress has not set the time within which such an action must be brought." *Id.* at ——–——, 111 S.Ct. at 2778–79. First, where "the claim asserted is one implied under a statute that also contains an express cause of action with its own time limitation, a court should first look to the statute of origin to ascertain the proper limitations period." *Id.* at ——, 111 S.Ct. at 2780. "Only where no analogous counterpart is available should a court then proceed to apply state-borrowing principles." *Id.; see also In re Taxable Municipal Bond,* 1992 WL 124783 at *3–5 (discussing *Lampf*).

If the statute of origin does not contain any "comparable express remedial provisions" the Court must then apply the three part test for choosing between borrowing a state or federal limitations period. The first inquiry under the three part test is whether a uniform statute of limitations is appropriate. *Id.,* 501 U.S. at ——, 111 S.Ct. at 2779. Then, assuming a uniform statute of limitations is desirable, the Court must decide whether the limitations period is to be chosen from state or federal law, focusing particularly on the geographic character of the claim. *Id.*

Finally, even if geographic considerations indicate the desirability of a federal limitations, the Court must also determine that an analogous federal source "truly af-

19. Defendants may be correct in their assertion that if February 4, 1991 is the relevant date, then the Goldstein Complaint would have been filed outside the statute of limitations and because it relates specifically to Fund II, and the Seidel Complaint relates to Retirement Fund II, then the statute of limitations would not be tolled on the Goldstein Complaint. *See Robbin v. Fluor Corp.,* 835 F.2d 213, 214 (9th Cir.1987); *Korwek v. Hunt,* 827 F.2d 874, 878 (2d Cir.1987). However, as Plaintiffs have also alleged that date of inquiry notice was April 1, 1991, the Court finds it inappropriate to decide this issue at this time.

20. Few courts have been called upon to determine a limitations period for implied private rights of action under the Investment Company Act. *See In re Taxable Municipal Bond Securities Litigation,* 1992 WL 124783 at *3 (June 4, 1992 E.D.La.) (statute of limitations for private claims under sections 15 U.S.C. §§ 80a–7, 80a–8 is one year from discovery, three years from accrual); *Herm v. Stafford,* 663 F.2d 669, 680 & n. 16 (6th Cir.1981) (assuming without deciding cause of action under 15 U.S.C. § 80a–20, statute of limitations is that found under Kentucky Blue Sky law—3 years).

fords a 'closer fit' with the cause of action at issue than does any available state-law source." *Id.* Under this last prong, the Court should consider such factors as commonality of purpose and similarity of elements. *Id.*

Plaintiffs contend that *Lampf* compels application of the five-year statute of limitations found in section 36(a) of the Investment Company Act to Plaintiffs' implied private rights of action brought pursuant to the Investment Company Act. The Court is not persuaded that Plaintiffs' interpretation of *Lampf* is correct.

*Lampf* counseled courts that "[w]here, as here, the claim asserted is one implied under a statute that also contains an *express cause of action* with its own time limitation, a court should look first to the statute of origin to ascertain the proper limitations period." *Id.* at ——, 111 S.Ct. at 2780 (emphasis added). Section 36(a) creates an express cause of action for breach of fiduciary duty by certain management personnel of an investment company. However, the five year limitations period in section 36(a) expressly applies to SEC regulatory proceedings, not private litigants. Because section 36(a) provides a remedy in favor of the SEC as opposed to private litigants, the Court finds that it is not "comparable" to the rights of action being implied under the sections Investment Company Act at issue here. Therefore, *Lampf* does not mandate the application of the five year limitations period.

For similar reasons, the Court rejects Defendants' arguments that the one year period found in section 36(b) ought to be applied to Plaintiffs' Investment Company Act claims. Section 36(b) creates a private right of action for breach of fiduciary duty related to the compensation paid by an investment company or security holders to an investment advisor. 15 U.S.C. § 80a-35(b).

As with the five year period expressly rejected by the Supreme Court in *Lampf,* subsection (b) focuses on a narrow, specific problem. It is therefore, not comparable to the broad implied rights of action at issue here. Accordingly, the Court concludes that *Lampf* does not mandate borrowing this one year period from § 36(b).

Having determined that there is no comparable express remedial remedy in the Investment Company Act itself, the Court must now determine the appropriate limitations period using the three part analysis set forth in *Lampf.* First, the Court finds that a uniform federal statute of limitations for Investment Company Act claims is appropriate. *Lampf,* at ——, 111 S.Ct. at 2778 (finding uniform federal period for section 10(b) claims). *See also In re Taxable Municipal Bond,* 1992 WL 124783 at *3-5 (reading *Lampf* to compel federal limitations period for Investment Company Act claims). As the Supreme Court in *Lampf* noted, a federal limitations period is appropriate

> when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking.

*Lampf,* 501 U.S. at ——, 111 S.Ct. at 2778 (quotations omitted). The Court finds that such is the case with claims under the Investment Company Act.

Therefore, the next question becomes whether a federal or state period should govern. The Supreme Court has instructed the Court to pay particular attention to the geographic character of the claim. Where the provisions at issue "encompass numerous and diverse topics and subtopics," and the claims under the statute are of a multistate nature, a uniform federal limitations period is generally desirable. *Id.* at ——, 111 S.Ct. at 2779. Without question claims arising under the Investment Company Act are of a multistate nature, and therefore should be governed by a limitations period derived from a federal source.

Finally, the Court must find determine that the borrowed federal limitations period affords a "closer fit" with the cause of action at issue than would any available state-law source. The relevant considerations in this inquiry include the "commonality of purpose and similarity of elements," *id.* "which period

will further the policies behind [the particular sections of the federal securities] law, ... the interest in uniformity, and the interest in having clearly defined, easily applied rules." *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1034 (2d Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 494, 121 L.Ed.2d 432 (1992).

The nature and remedial purposes of sections 57, 36 and 17 of the Investment Company Act are more similar to claims under the Securities Act than claims for common law fraud or breach of fiduciary duty. These provisions, and the complex rules and regulations promulgated thereunder, are detailed and complex, like those found in the 1933 and 1934 Acts.

Moreover, the ⅓ limitations period provided for under the 1933 and 1934 Acts represents a balancing of the same concerns as are involved under the Investment Company Act. Each of the three acts comprise a part of a single body of federal securities law designed to regulate those who deal in the national securities market for the common goal of protecting investors. For these reasons, the Court finds that the one year from discovery and three year period of repose limitations period generally applied to claims under the 1933 and 1934 Acts will likewise apply to Plaintiffs' claims under the Investment Company Act.

The section 57 and section 36 Investment Company Act claims accrued each time that a prohibited transaction occurred because each prohibited transaction constituted a violation of section 57 and a breach of the fiduciary duties of certain Defendants to the Funds. The Hills transaction occurred on April 3, 1990. The first Petco transaction occurred on April 6, 1990. The second Petco transaction occurred on November 16, 1990. The third Petco transaction occurred on April 19, 1991. The only date provided for the Stanley transactions was July 5, 1991. The section 17(j) Investment Company Act claims accrued at the time of the Hills transaction on April 3, 1990, and at the time of the Stanley transaction on July 5, 1991.

Based on these dates, it is clear that the Stanley transaction and the third Petco transaction, having accrued within one year of the filing of the Complaint, are within the one year—three year statute of limitations. Moreover, as the Court has determined with regard to Plaintiffs' 1933 Act and 1934 Act claims, Plaintiffs have sufficiently plead compliance with the ⅓ statute of limitations with regard to the Hills transaction and the first and second Petco transactions. Accordingly, the Court will deny Defendants' motion to dismiss Counts IV–VIII for failure to plead compliance with the applicable statute of limitations.

### *B. Hutchins Wheeler & Dittmar, P.C.'s Motion to Dismiss*

HW & D raises four arguments that the Second Consolidated Amended Complaint should be dismissed as to it. First, HW & D contends that the claims against HW & D are barred by the statute of limitations. Second, HW & D contends that the counts against HW & D under the Investment Company Act based on secondary liability for aiding and abetting fail to state a claim. Third, HW & D contends that Plaintiffs' fraud allegations lack sufficient particularity as required by Fed.R.Civ.P. 9(b). Fourth, HW & D asserts that Plaintiffs' negligent misrepresentation cause of action may not be brought based upon information disseminated to public shareholders.

#### *1. Aider and Abettor Liability, Counts IV, VI, and VII*

For the reasons discussed above in section II.B.3., Counts IV, VI, VII, and VIII based on aider and abettor liability will be dismissed as against HW & D for failure to state a claim.

#### *2. Statute of Limitations*

##### *a. Federal Securities Law Claim, Count III*

As the Court determined above in section II.B.4., Plaintiffs' cause of action against HW & D under section 10(b) of the 1934 Act and Rule 10b–5 is governed by the 1 year from date of discovery, three year repose statute of limitations. *Lampf*, 501 U.S. at —, 111 S.Ct. at 2782; *In re Data Access Systems Sec. Litig.*, 843 F.2d 1537 (3d Cir.) (en banc),

*cert. denied,* 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988). HW & D was added as a defendant in Plaintiffs' second consolidated amended complaint filed on April 27, 1993. Plaintiffs purchased their interest in the Funds on November 10, 1989. It appears, therefore, that plaintiff's claim is barred by the three year repose time period.

Plaintiffs attempt to circumvent the statute of limitations bar by arguing that the amendment adding HW & D as a defendant relates back to the date of Plaintiffs' original pleading. Pursuant to Rule 15(c) of the Federal Rules of Civil Procedure an amendment adding a party relates back to the date of the original pleading if the party

> (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

The four criteria for relation back are:

> 1) the claim must have arisen out of the conduct set forth in the original pleading;
>
> 2) the party to be added must have received notice so that it will not be prejudiced in maintaining a defense;
>
> 3) the party to be added must have known that, but for a mistake concerning identity, the action would have been brought against it;
>
> 4) the second and third requirements must have been fulfilled within the period provided by Rule 4(j). *Schiavone v. Fortune,* 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986); Fed.R.Civ.P. 15(c).

The claims asserted against HW & D arise out of the same conduct that Plaintiffs set forth in their original pleading. In addition, as HW & D appeared in this litigation as defense counsel for the Funds and the Lee Defendants early in 1992, HW & D could not dispute that it had sufficient notice of the action within the limitations period. Moreover, the lack of prejudice to HW & D in maintaining a defense to this lawsuit is beyond dispute. It has been involved in defending the lawsuit since early 1992.

The real dispute between the parties centers on the third requirement—but for a mistake concerning identity, HW & D should have known that it would have been named as a defendant. Plaintiffs do not assert that they made a "mistake" in not naming HW & D in the original pleading. Rather, they appear to be asserting that during discovery they were provided with evidence of HW & D's alleged wrongdoing. A similar argument was rejected by the District Court for the Northern District of California.

> [T]his Court cannot adopt plaintiffs' novel argument that culpability constitutes identity. Plaintiffs argue that even though they knew that Ruffa provided legal services for Rexplore from the beginning of the litigation, they did not know of Ruffa's *identity in terms of culpability.* This is an unprecedented and unwarranted extension of Rule 15(c).

*In re Rexplore, Inc. Sec. Litig.,* 685 F.Supp. 1132, 1145 (N.D.Cal.1988). The Court agrees. To accept Plaintiffs' liberal reading of Rule 15(c)'s requirements—essentially that notice is sufficient—would render statutes of limitations virtually meaningless.

Plaintiffs rely on two cases to support their relation back argument. *See Sorrels v. Sears, Roebuck & Co.,* 84 F.R.D. 663, 667 (D.Del.1979); *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.,* 621 F.Supp. 310, 313 (D.Del.1985). In both cases, the Court granted Plaintiffs leave to amend the complaint to add an additional party. However, unlike the present case, the plaintiffs in both *Sorrels* and *E.I. DuPont de Nemours & Co.* alleged that the party to be added was not named in the original complaint due to a "mistake." In *Sorrels,* the newly added defendant would have been named in the original pleading but for the plaintiff's mistake concerning its formal corporate identity. In *E.I. DuPont de Nemours & Co.,* "but for DuPont's mistaken assumption that Phillips would produce documents within the possession, custody or control of [the newly added defendant], DuPont would have moved to add [this defendant] at an earlier stage in this

action." *E.I. DuPont de Nemours & Co.*, 621 F.Supp. at 315.

In contrast, Plaintiffs make no allegation that its failure to name HW & D as a defendant in the original pleadings was due to a mistake of any sort. As the Court of Appeals for the Ninth Circuit has stated, "Rule 15(c) was never intended to assist a plaintiff who ignores or fails to respond in a reasonable fashion to notice of a potential party, nor was it intended to permit a plaintiff to engage in piecemeal litigation." *Kilkenny v. Arco Marine, Inc.*, 800 F.2d 853, 857–58 (9th Cir.1986), *cert. denied*, 480 U.S. 934, 107 S.Ct. 1575, 94 L.Ed.2d 766 (1987). Therefore, the Court will dismiss Count III of the Complaint as against HW & D.

***b. State Law Claims, Counts IX, X***

HW & D also contends that Plaintiffs' state law claims for common law fraud and negligent misrepresentation are barred by Delaware's three year statute of limitations. *See* Del.Code Ann. tit. 10, § 8106. Alternatively, HW & D seeks dismissal of Plaintiffs' state law claims under the Court's discretionary power to dismiss state law claims against a defendant when the federal law claims are dismissed. *Cooper v. Merrill*, 736 F.Supp. 552, 566 (D.Del.1990) (dismissing state-law claims against defendant where no federal claims against defendant remained, even though federal claims remained against co-defendant).

Plaintiffs do not dispute that the three year limitations period found in § 8106 is the appropriate limitations period. Rather they assert: (1) the three years does not accrue until "a person of ordinary intelligence and prudence would have facts sufficient to put them on [inquiry notice]"; (2) even if the causes of action accrued on November 10, 1989, Plaintiffs' claims are not time-barred because they relate back under Rule 15(c). As the Court has already disposed of Plaintiffs' relation back arguments, the Court will discuss Delaware's three year statute of limitations.[21]

Under Delaware law, a statute of limitations begins to run when a cause of action arises, even when a plaintiff is ignorant of the facts. *Isaacson, Stolper & Co. v. Artisan's Savings Bank*, 330 A.2d 130 (Del. Supr.1974). However, Delaware has developed an exception to this general rule where the action is "inherently unknowable." In this instance, the statute of limitations is tolled until such time that a "person of ordinary intelligence and prudence would have facts sufficient to put them on 'inquiry which, if pursued, would lead to the discovery' of the injury." *Studiengesellschaft Kohle, mbH v. Hercules, Inc.*, 748 F.Supp. 247, 252 (D.Del. 1990) (quoting *Wilson v. Simon*, 1990 WL 63922 (Del.Super.1990)). Plaintiffs are entitled to rely on the tolling under the inherently unknowable exception if they can demonstrate that they were blamelessly ignorant of the acts or omissions and the injury.

Although HW & D argues that Plaintiffs have failed to allege that the alleged fraud was inherently unknowable until February 1991, the Court disagrees. Reading the Complaint as a whole, and drawing all reasonable inferences therefrom, the Court finds that Plaintiffs have pleaded facts sufficient to demonstrate that the injury resulting from Defendants' alleged misrepresentations was unknowable until April 1, 1991. Thus, HW & D's motion to dismiss Plaintiffs' state law claims on the ground that it is time-barred will be denied.

***3. Failure to Plead Fraud With Particularity***

HW & D also argues that Count III, which asserts a violation of section 10(b) of the 1934 Act and Rule 10b–5, and IX, which

21. The Court declines to dismiss plaintiffs' state law claims against HW & D even though the federal law claims against HW & D no longer remain. In exercising its discretion to exercise supplemental jurisdiction over pendent state claims, a court should consider principles of comity, judicial economy, convenience and fairness to the litigants. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). Because numerous counts remain against a substantial number of defendants, and the remaining counts focus on the same conduct, the Court finds that judicial economy warrants retaining jurisdiction. Furthermore, comity is not implicated where it appears, at this stage of the proceeding, that the Court will preside over the same state law claims as against the other defendants.

asserts common-law fraud, should be dismissed on the basis that Plaintiffs fail to satisfy Rule 9(b) of the Federal Rules of Civil Procedure's requirement of particularity. HW & D asserts that the Complaint fails to link HW & D to the alleged misrepresentations in the Funds' Prospectus. HW & D cites cases where courts have dismissed complaints where there were no allegations linking certain Defendants to the fraudulent misrepresentation or omission, and where the allegations of scienter were general and broad.

The Court does not find HW & D's argument persuasive. Rule 9(b) of the Federal Rules of Civil Procedure states in full "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." The Court of Appeals for the Third Circuit has stated that the particularity requirement is designed to "place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984), (Rule 9(b) satisfied where each allegation of fraud described the nature and subject of the alleged misrepresentation), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985). While conclusory allegations that do nothing more than mirror language of statutes and rules are not sufficient under Rule 9(b), the requirement of particularity does not require " 'an exhaustive cataloging of facts but only sufficient factual specificity to provide assurance that plaintiff has investigated ... the alleged fraud and reasonably believes that a wrong has occurred.' " *Temple v. Haft*, 73 F.R.D. 49, 53 (D.Del.1976) (quoting *DuPont v. Wyly*, 61 F.R.D. 615, 631 (D.Del.1973)).

With the above considerations in mind, the Court concludes that the Complaint alleges the circumstances of fraud with sufficient particularity to satisfy Rule 9(b). Whether or not Plaintiffs will be successful in proving that HW & D aided and abetted the misrepresentations and omissions alleged with regard to the Prospectus, they have adequately plead the circumstances constituting the fraud, i.e. that HW & D allegedly misrepresented to the SEC that the Funds would not make any initial investment in companies already controlled by the Lee company, and that HW & D concealed from the SEC Lee's presumed control over Petco. Thus, HW & D's motion to dismiss Counts III and IX for failure to plead fraud with particularity will be denied.

#### *4. Negligent Misrepresentation, Count X*

Finally, HW & D argues for the dismissal of Plaintiffs' negligent misrepresentation claim on the ground that Plaintiffs do not have standing, or in the alternative that the allegations in the complaint related to Plaintiffs' reliance on the alleged misrepresentation and the economic harm suffered by Plaintiffs is insufficient as a matter of law. Under Delaware common law, persons who negligently misrepresent material facts are liable to those who justifiably rely on those misrepresentations to their economic detriment. However, a claim of negligent misrepresentation may be brought only by members of " 'a limited group of persons for whose benefit and guidance' the information is intended." *Brug v. Enstar Group, Inc.*, 755 F.Supp. 1247, 1258 (D.Del.1991) (quoting *Insurance Co. of North America v. Waterhouse*, 424 A.2d 675, 678 (Del.Super.1980) and *Restatement (Second) of Torts* § 552(2)(a) (1977)); *see also In re Delmarva Sec. Litig.*, 794 F.Supp. 1293, 1310–11 (D.Del. 1992).

In *Brug* and *In re Delmarva*, as in the present case, the only documents which plaintiffs identified as containing the alleged misrepresentations were ones released to the public at large. *Brug*, 755 F.Supp. at 1258 (the publicly disseminated documents included press releases, filings with SEC, Registrations Statements, Annual Reports); *In re Delmarva Sec. Litig.*, 794 F.Supp. at 1306, 1310 (the publicly disseminated documents included SEC filings and press releases). In both cases, this Court found that the plaintiffs were not members of a limited class for

whose benefit the press releases and SEC filings were disseminated.

Similarly to the plaintiffs in *Brug* and *In re Delmarva Sec. Litig.*, Plaintiffs allege that they were induced to purchase their interests in the Funds by publicly-disseminated documents, including an alleged misleading Prospectus and Registration Statement. Although Plaintiffs successfully argue that Delaware no longer requires that Plaintiffs be in privity with alleged Defendants, Plaintiffs cite no Delaware decision extending liability for negligent misrepresentation to the general investing public. As this Court has stated, "[i]f any member of the public who might choose to invest in [the defendant's] stock were to qualify as part of a protected class, the 'limited group' requirement would be meaningless." *Brug,* 755 F.Supp. at 1258; *In re Delmarva Sec. Litig.,* 794 F.Supp. at 1310 (quoting *Brug* ).[22] The Court finds this reasoning persuasive, and will therefore, dismiss Plaintiffs' negligent misrepresentation claim for lack of standing.

### *C. Plaintiffs' Motion to Disqualify Hutchins Wheeler & Dittmar as Attorneys for the Lee Defendants*

Plaintiffs seek to have HW & D disqualified from representing any defendant in this action due to HW & D's dual position as both advocate and material witness, as well as HW & D's conflict of interest with its clients. HW & D originally entered as counsel for both the Funds and the Lee Defendants. It has since withdrawn from presentation of the Funds.

A district court has the authority to supervise the conduct of attorneys appearing before it. *Richardson v. Hamilton Int'l Corp.,* 469 F.2d 1382, 1385–86 (3d Cir.1972), *cert. denied,* 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973). This includes the power to disqualify attorneys. *United States v. Miller,* 624 F.2d 1198, 1201 (3d Cir.1980). In determining whether to disqualify an attorney, the Court should balance the purposes to be served by the particular rule against such countervailing interests as a litigant's right to retain counsel of his choice. *Id.* at 1201.

Plaintiffs argue that HW & D's disqualification is mandated by the advocate/witness rule of both the Delaware Rules of Professional Responsibility (Rule 3.7) and Massachusetts' disciplinary rules (DR 5–102(B)). In addition, Plaintiffs contend that disqualification is mandated under Rule 1.7(b) because a conflict exists between the interests of the Lee Defendants and HW & D.

Rule 1.7(b) states that "a lawyer shall not represent a client if the representation of that client may be materially limited by ... the lawyer's own interests." At the outset, the Court notes that Plaintiffs have failed to satisfy their burden of demonstrating that an actual conflict of interest exists between HW & D and the Lee Defendants. Although HW & D faces potential liability for the same fraudulent conduct attributed to the Lee Defendants, the papers before the Court do not reveal any adverse defensive positions. Moreover, other than broad arguments, Plaintiffs have not demonstrated how these alleged conflicts of interest have interfered with HW & D's representation of the Lee Defendants.[23]

To the extent that a potential conflict of interest exists, the Court is satisfied that HW & D has adequately discussed the matter with its client, Thomas H. Lee, and has obtained the necessary consent after full disclosure as required by Rule 1.7. The Court

22. Plaintiffs' reliance on *Shapiro v. UJB Fin. Corp.,* 964 F.2d 272 (3d Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992) is misplaced. In *UJB,* the Third Circuit held that New Jersey common law extended liability for negligent misrepresentations to foreseeable individual investors. However, this is clearly a minority view. Moreover, Delaware's adherence to Restatement (Second) of Torts § 552 leads this Court to believe that Delaware would not extend liability for negligent misrepresentation quite as expansively.

23. Plaintiffs have provided the Court with deposition excerpts to demonstrate that HW & D has contradicted Lee on the issue of the disclosure made in the Fund II prospectus. Having read the excerpt, the Court does not agree that the testimony is in conflict. Both witnesses testify that they disclosed everything that was required. HW & D further testified that they decided not to disclose "extra" information. This is not necessarily inconsistent with Lee's testimony.

is also satisfied, at this juncture, that HW & D might reasonably believe that its representation of the Lee Defendants will not be adversely affected by HW & D being named in the suit.

Therefore, the issue remaining is whether the possibility that some HW & D attorneys may be called to testify at trial mandates that HW & D be disqualified at this time. Rule 3.7(a) generally prohibits a lawyer from acting as advocate at a trial in which the lawyer is likely to be a necessary witness. However, Rule 3.7(b) permits another lawyer in the lawyer-witness's firm to "act as advocate in a trial in which the [lawyer-witness] is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9." [24]

The applicable Massachusetts disciplinary rule, DR 5-102(A) provides that if "a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial, and his firm, if any, shall not continue representation in the trial." Courts have articulated various standards to determine when a lawyer "ought" to testify on behalf of a client. *See Brotherhood Ry. Carmen v. Delpro Co.*, 549 F.Supp. 780, 788 (D.Del.1982) (discussing various standards). In *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equip. Corp.*, 546 F.2d 530, 538 (3d Cir.1976), *cert. denied*, 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977), the Third Circuit suggested that a lawyer ought to testify within the meaning of DR 5-102(A) when he "has crucial information in his possession which must be divulged." *See also Brotherhood Ry. Carmen*, 549 F.Supp. at 787-88 (motion to disqualify base on DR 5-102(A) of the Model Code of Professional Responsibility).

The Court is unable to determine at this time whether HW & D attorneys "ought" to testify, or if they should testify, whether the possibility of prejudice to the Plaintiffs requires that the entire firm be disqualified. For these reasons, determination of disqualification of HW & D on these grounds would be premature. Therefore, the Court will deny Plaintiffs' motion to disqualify HW & D. However, Plaintiffs will be permitted to renew the motion, no later than the discovery cut-off date, if it appears that HW & D ought to testify. While the Lee Defendants have been permitted to retain the counsel of their choice, they and HW & D may wish to consider the possibility of HW & D being disqualified later in these proceedings should the Court be presented with facts sufficient to determine that HW & D's participation encroaches upon this Court's ethical rules.

### *D. Motion for Class Certification*

Plaintiffs have moved pursuant Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure for certification of a plaintiff class consisting of:

> all persons and entities who purchased units in ML-Lee Acquisition Fund II, L.P. and ML-Lee Acquisition Fund (Retirement Accounts) II, L.P. (together "Funds") during the period from November 10, 1989 and January 5, 1990, excluding the defendants, their subsidiaries and affiliates, and members of the immediate family of each of the individual defendants.

(D.I. 341 at 1). Defendants oppose the class certification, arguing that a class action is not the superior method of adjudicating Plaintiffs' claims as required by 23(b)(3), and that Plaintiffs Goldstein and Seidel are not adequate and typical class representatives as required by 23(a)(3) and 23(a)(4). For the reasons set forth, the Court will certify the class as proposed.

Plaintiffs, as the proponents of class certification, have the burden of establishing a right to class certification. *Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir.1974). Rule 23 governs class actions in the federal courts. Subsection (a) lists the prerequisites to maintaining a class action. It provides that one or more members of a class may sue as representative parties on behalf of the entire class only if (1) the class is so numerous that joinder of all members is impracticable (nu-

24. An example of a situation offered in the Comment to Rule 3.7 which would be improper under Rule 1.7 is when "there is likely to be substantial conflict between the testimony of the client and that of ... a member of the lawyer's firm."

merosity), (2) there are questions of law or fact common to the class (commonality), (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality), and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy).

Rule 23(b) describes when class actions may be maintained if the prerequisites of subsection (a) are satisfied. Subsection (b)(3) provides that an action may be maintained as a class action if the prerequisites of subsection (a) are satisfied and, in addition:

> [1] the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### *1. Rule 23(a)*

#### *a. Numerosity*

Defendants do not dispute that Rule 23(a)(1)'s numerosity requirement has been satisfied. Courts generally consider the estimated number of parties in the proposed class, the expediency of joinder, and the practicality of multiple lawsuits when determining whether the numerosity requirement is met. *See In re Data Access Sys. Sec. Litig.,* 103 F.R.D. 130, 137 (D.N.J.1984); *Peil v. Nat'l Semiconductor Corp.,* 86 F.R.D. 357, 365 (E.D.Pa.1980). In this case, Plaintiffs allege that there are over 33,000 investors, excluding Defendants, who purchased units in the Funds between November 10, 1989 and January 5, 1990. The Court finds this number of alleged investors in the Funds is sufficient to satisfy the numerosity requirement of 23(a)(1).

#### *b. Common Questions of Law or Fact*

Defendants also do not dispute that there are common questions of law and fact which predominate over any questions affecting only individual members of the class. Plaintiffs allege there are common issues of law and fact related to Defendants' alleged violations of sections 11, 12(2), and 15 of the 1933 Act, section 10(b) of the 1934 Act, sections 17(j), 36, 56, and 57 of the Investment Company Act and various state laws. Defendants' alleged misrepresentations or omissions and breaches of fiduciary duties that underlie Plaintiffs' allegations are common questions as to all investors. Accordingly, the Court finds that Plaintiffs have satisfied the common-question requirement of 23(a)(2).

#### *c. Typicality*

Defendants contend that Rule 23's typicality requirement cannot be satisfied because "the claims of Goldstein and Seidel are subject to unique defenses that would dominate the trial of this case and detract from the claims of the putative class." Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, D.I. 351, at 25. In support of this contention, Defendants cite *Zenith Lab., Inc. v. Carter-Wallace, Inc.,* 530 F.2d 508, 512 (3d Cir.), *cert. denied,* 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976) ("[s]ince these unique defenses could conceivably become the focus of the entire litigation and divert much of Zenith's attention from the suit as a whole, the remaining members of the class could be severely disadvantaged by Zenith's representation"). More specifically, Defendants allege that Goldstein and Seidel both face significant statute of limitations defenses to their claims, and Goldstein further faces unique lack of reliance defenses.

The focus of Rule 23(a)'s typicality inquiry is whether "the named Plaintiffs' individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Weiss v. York Hospital,* 745 F.2d 786, 809 n. 36 (3d Cir.1984), *cert. denied,* 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985); *accord Gruber v. Price Waterhouse,* 117 F.R.D. 75, 79 (E.D.Pa.1987) (quoting *Weiss* ); *see also In re Data Access Systems Sec. Litig.,* 103 F.R.D. 130, 138–40 (D.N.J.1984) (whether the named Plaintiffs and the other members of the class, can "point to the same broad course of alleged fraudulent conduct" to support a claim for relief). Rule 23(a)(3) does not require Plaintiffs to show that their claims are identical on

every issue to those of the class, but merely that significant common questions exist.

At the outset, the Court notes that the claims of the named representatives and the class are, as the District Court for the District of Massachusetts stated, "in a common sense way" typical of the claims of all class members. The claims allege that the Defendants engaged in a common course of conduct with respect to all members of the class. Defendants do not dispute this point. Defendants assert, however, that because Goldstein and Seidel were on inquiry notice as early as February 5, 1990 their claims are time-barred, and thus they are atypical Plaintiffs.

The Court acknowledges that dispositive defenses that are unique to the named Plaintiffs may render their claims atypical. *Zenith,* 530 F.2d at 512. However, Defendants' statute of limitations defenses are not as clearly dispositive or particular to one small group of plaintiffs as was the *res judicata* defense asserted in *Zenith.* Moreover, in contrast to the *res judicata* defense in *Zenith,* Defendants' statute of limitations defenses are not unique to Seidel and Goldstein. Similar statute of limitations arguments may be raised against all class members.[25]

The Defendants also object to the typicality of plaintiff Goldstein's claims under the 1934 Act, as well as the common law fraud and negligent misrepresentation claims on the ground that Goldstein did not rely on the allegedly fraudulent prospectus in deciding to invest in Retirement Fund II. As with the statute of limitations defense, the question of whether Goldstein relied on the prospectus directly or whether he relied on his broker who read the prospectus is likely to be a question typical of all class members.[26]

In addition, Plaintiffs' allegations of "fraud-on-the-market" and "fraud-created-the-market" may vitiate the necessity of proving reliance with regard to the federal securities fraud claims. Although Defendants proffer a lengthy argument that these theories are not available to Goldstein because he allegedly never read the prospectus; this argument goes to the merits of the case, and is best left for consideration at a later date.

Moreover, even without considering the merits, the Court is not persuaded that the fact that Goldstein allegedly did not read the entire prospectus renders him an atypical representative. The issue regarding the availability of a presumption of reliance is likely to be an issue common to the entire class. Accordingly, the Court finds that Goldstein's claims are not atypical because of possible differences in reliance defenses, and that neither Goldstein's nor Seidel's claims are rendered atypical by Defendants' statute of limitations arguments.

#### *d. Adequacy of Representation*

Defendants also argue that Plaintiffs are inadequate class representatives as required by Rule 23(a)(4). In support of their argument, Defendants assert that (1) Goldstein is a professional plaintiff, (2) Goldstein and Seidel have delegated all responsibility for the conduct of the lawsuit to their attorneys, and (3) Goldstein and Seidel have abrogated financial responsibility for the case.

Rule 23 (a)(4) requires Plaintiffs and their attorneys to demonstrate that they will "competently, responsibly and vigorously prosecute the suit." *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 449 (3d Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). The Court of Appeals for the Third Circuit's adequacy-of-representation standard is succinctly articulated in

25. The Court is not persuaded by defendant's reliance on *U.S. Healthcare, Inc. Sec. Litig.,* [1992 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,063 (E.D.Pa. Sept. 28, 1988) or *Leroy v. Paytel III Management Assoc., Inc.,* [1992–1993 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,352 (S.D.N.Y. Nov. 24, 1992) both of which refused to certify named plaintiffs as class representatives, in part, because the named plaintiffs were subject to statute of limitations defenses. In both of those cases, the courts found that the particular facts of the case supported a statute of limitations defense that was truly unique to the named representatives.

26. For the same reasons, the court also finds Goldstein's common law fraud claims typical under Rule 23(a)(3) even though he must prove direct reliance. *Peil v. Speiser,* 806 F.2d 1154, 1163 (3d Cir.1986).

*Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975):

> Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class.

Defendants do not contest the qualifications of Plaintiffs' attorneys, and the Court is satisfied that Plaintiffs' attorneys are sufficiently qualified and experienced to manage the proposed class litigation. Furthermore, while Defendants cite to Plaintiffs' deposition testimony, which Defendants allege demonstrates a lack of control and knowledge in the litigation, Defendants do not argue that Plaintiffs have antagonistic interests. Courts in this circuit hold Plaintiffs to a very minimal requirement of knowledge about the litigation and the facts upon which it is based. *See Lewis v. Curtis*, 671 F.2d 779, 789 (3d Cir.) (class representative adequate even where he "displayed a complete ignorance of the facts concerning the transaction that he was challenging), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982); *In re Data Access*, 103 F.R.D. 130, 141 (D.N.J. 1984); *Peil v. Speiser*, 97 F.R.D. 657, 660 (E.D.Pa.1983).

The Court may find antagonism between the interests of the Plaintiffs and those of the class when Defendants assert unique defenses against the named plaintiff, or when the plaintiff's situation is unique. *Lerch v. Citizens First Bancorp, Inc.*, 144 F.R.D. 247, 251 (D.N.J.1992). However, as the Court determined above in the discussion of the typicality of Plaintiffs' claims, the defenses asserted by Defendants are not so unique as to defeat class certification.

Finally, the Court declines to accept Defendants' characterization of the deposition testimony of Goldstein and Seidel. A review of the deposition testimony demonstrates that while Goldstein and Seidel do not possess a detailed knowledge of all of the facts underlying each defendant's liability and the legal basis for that liability, they both have a clear layperson's understanding of the nature of the action, and the conduct of certain Defendants that forms the basis of the allegations. This is more than sufficient to qualify them as adequate representatives under Rule 23(a)(4).

Defendants also argue that Goldstein and Seidel are inadequate representatives because they have abrogated financial responsibility of the case. Goldstein and Seidel have each entered into retention agreements with their respective counsel which provide that counsel will advance most or all of the litigation expenses on a contingent basis.

As Plaintiffs note, this is ethically proper under Delaware's Rules of Professional Conduct. However, even though ethical rules generally permit counsel to advance litigation costs on a contingent basis, such arrangements must be subjected to special scrutiny in the context of large class actions. In this situation, the risk that a class representative could be coerced into complying with an attorneys' advice is particularly acute.

Defendants seek to defeat the certification of the class by arguing that Seidel and Goldstein are unwilling to pay the expenses necessary to litigate this class action. However, the mere fact that Goldstein and Seidel testified that they are unwilling to advance costs in light of their retention agreements is not sufficient to render them inadequate Plaintiffs. Defendants have failed to demonstrate that Goldstein's and Seidel's resources are insufficient to allow them to proceed with substitute counsel without a contingent expense agreement should they disagree with counsel's tactics. Therefore, the Court has no basis to conclude that there exists a risk of Plaintiffs being coerced into complying with counsels' advice because of the potential threat of funding revocation.

Finally, Defendants contend that Goldstein and Seidel lack standing to represent the proposed class and that this lack of standing subjects them to another potentially debilitating unique defense rendering them inadequate class representatives. Defendants argue that because Goldstein has never owned Fund II securities, he cannot represent investors who do own or have owned Fund II securities. Defendants likewise argue that

because Seidel has never owned Retirement Fund II securities, he cannot represent investors who do own or have owned Retirement Fund II securities. The Court does not agree.

It is undisputed that Fund II and Retirement Fund II securities are substantially identical. Both of the Funds were marketed pursuant to the same Prospectus which is the subject of many of Plaintiffs' allegations of wrongdoing. Moreover, Defendants do not contend that combining Fund II investors and Retirement Fund II investors in the same class would destroy commonality or for some other reason render the maintenance of the class unfair. *Accord Green v. Wolf Corp.*, 406 F.2d 291, 299 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969) (an investor who purchased securities pursuant to a third prospectus was an adequate representative of a class which included investors who purchased securities pursuant to an earlier prospectus because the same misstatements were present in both). Accordingly, the Court finds that the fair and efficient administration of the litigation would be served by certifying the class as proposed with Plaintiffs Goldstein and Seidel as class representatives.

### 2. *Rule 23(b)*

In addition to the prerequisites found in Rule 23(a), Rule 23(b)(3) requires the Court to find that the common questions of law or fact predominate over any questions affecting individual members, and that the class action is the superior method of adjudicating the controversy. Defendants advance two arguments that a class action is not the superior method for adjudicating this case: (1) Plaintiffs' claims seeking rescission would actually harm the class because the Funds' units are worth far more than class members would receive through rescission; and (2) Plaintiffs' claims challenging the operation of the Funds under the 1940 Act are derivative claims and not amenable to class treatment.

#### *a. Plaintiffs' Claims Seeking Rescission of Their Investment Would Harm the Class*

Counts I and II of the Complaint allege that the Funds' prospectus misrepresented and omitted material information in violation of sections 11 and 12 of the 1933 Act. Under Section 12 an injured plaintiff who still owns his security is entitled to recover his purchase price plus interest, less any income received. 15 U.S.C. § 77*l* (2). The Third Circuit has held that rescission is the appropriate remedy for a section 12 claim. *In re Craftmatic Sec. Litig.*, 890 F.2d 628, 637 (3d Cir.1989).

Defendants assert that the Fund II units and past cash distributions are worth $1,532.38, while the Retirement Fund II units and cash distributions are worth $1,770.48. If granted rescission, class members would exchange their Funds' units and cash distributions in order to receive back their $1000 purchase price plus interest. Thus, assuming Defendants' valuation of the Funds' units is accurate, class members would not benefit from the class action, at least with respect to Count II.[27]

Under section 11 of the 1933 Act, a plaintiff who still owns his security may recover "the difference between the amount paid for the security" and "the value thereof as of the time such suit was brought." 15 U.S.C. § 77k(e). Once again, Defendants argue that the value of the Funds' units, including cash distributions exceeded the $1,000 paid for each unit, and therefore rescission would not benefit the class members.

Defendants contend that because Plaintiffs are unable to show any loss from the resulting transactions, class certification should be denied. Defendants cite a number of cases in which courts denied class certification, in part, on the basis that some of the class members might not have been injured by the alleged misrepresentations or omissions. *See Romano v. Merrill Lynch, Pierce, Fenner & Smith*, 834 F.2d 523, 530–31 (5th Cir.1987); *Spivak v. Petro–Lewis Corp.*, 120 F.R.D. 693 (D.Colo.1988); *Zimmerman v. Bell*, 800 F.2d

27. Defendants seek to bolster their argument that rescission would harm the class members by contending that Goldstein and Seidel themselves are unwilling to accept rescission. Once again, the Court finds that defendants have characterized the deposition testimony too narrowly.

386, 389 (4th Cir.1986); *Hahn v. Breed,* 606 F.Supp. 1557 (S.D.N.Y.1985).

These authorities are unpersuasive. In *Hahn,* the Court denied certification because there was no evidence that the class members would benefit in any substantial way from the litigation. However, the court's conclusion was based, in part, on the court's belief that plaintiff was attempting to enhance his bargaining power by a claim that he was acting for a class of litigants. *Hahn,* 606 F.Supp. at 1563. In *Zimmerman,* the court denied class certification primarily because individual issues, such as knowledge of the omitted information, reliance defenses, and disparity in injury suffered by the various class members, rather than common ones predominated. *Zimmerman,* 800 F.2d at 390. Similarly, in *Romano,* the court denied class certification because *none* of the requirements of 23(a) had been met, and the plaintiff could show no loss resulting from the challenged transaction.

Unlike the cases cited by the Defendants, the Court has determined that Plaintiffs have satisfied the other requirements found in Rule 23. Moreover, it is by no means certain that Plaintiffs will be unable to show a loss resulting from the alleged misrepresentations and breaches of fiduciary duty by the Defendants. Defendants offer their valuation of the Funds' units. However, Plaintiffs vigorously contest this valuation as being self-serving and unsupported. The court is not willing to delve into what could be a protracted inquiry to settle this contested issue of fact at the class certification stage.

***b. Plaintiffs' Investment Company Act claims are derivative claims not appropriate for resolution as class action***

Defendants also contend that the class action is not the superior method of adjudicating this controversy because Plaintiffs' Investment Company Act claims challenging the operation of the Funds are derivative in nature. Whether a claim is individual or derivative in nature is determined from the nature of the harm inflicted and the nature of the rights violated. "Where the injury is personalized to a shareholder and

flows from a violation of rights inherent in the ownership of stock, suit may be brought by the shareholders. On the other hand, where the injury is to the corporation and only affects the shareholders incidentally, the action is derivative." *Dowling v. Narragansett Capital Corp.,* 735 F.Supp. 1105, 1113 (D.R.I.1990) (citing *Vincel v. White Motor Corp.,* 521 F.2d 1113, 1118 (2d Cir.1975)).

Defendants characterize Plaintiffs' allegations as claiming solely that the Hills, Petco and Stanley transactions caused a decrease in the value of Plaintiffs' partnership units. Contrary to Defendants' characterization, Plaintiffs' claims extend much beyond a mere diminution in the value of the Funds' units. Plaintiffs have alleged a plethora of violations of numerous securities laws. Among other things, Plaintiffs allege that the Defendants breached the partnership agreement with the individual investor Plaintiffs, and that each independent breach of contract resulted in a direct injury to each individual investor.

Moreover, the facts of this case, as alleged in the Complaint, convince the Court that a direct class action is more appropriate than a derivative action. In broad terms, Plaintiffs allege that Defendants, some of whom are Funds partners, used the Funds partnerships, and the class investors' money, to bolster other failing investments of Defendants. Plaintiffs are not merely alleging that the Funds partnerships were injured by Defendants' conduct, rather that the Funds were created to serve Defendants' purpose of defrauding Plaintiffs. Thus, if damages were recoverable by only the Funds' partnerships, the Defendants would actually be compensated for their own wrongdoing. This is a scenario in which other courts have found warrants the maintenance of a direct action as opposed to a derivative one. *See Dowling,* 735 F.Supp. at 1113. Accordingly, the Court concludes that the class action is the superior method of adjudicating this controversy.

***3. State Law Claims***

Defendants also argue that Plaintiffs' request for certification of a nationwide class based upon their pendent state law claims also should be denied. Defendants advance two reasons why the court should

decline to certify a class based on Plaintiffs' state law claims: (1) a nationwide class action will require the court to apply the laws of many different states to three separate substantive state law claims; (2) individual questions of reliance would render Plaintiffs' state law claims inappropriate for class treatment.

Addressing Defendants' second point first, the Court has already concluded above that the individual reliance issues do not predominate over the substantial common questions of law and fact with regard to liability. To the extent that individual issues of reliance are presented, the Court can deal with those through separate hearings.

The Court is similarly unpersuaded by Defendants' first point. First, as the Plaintiffs argue, it is likely under the "most significant relationship" test, *see Niemann v. Rogers,* 802 F.Supp. 1154, 1156 n. 1 (D.Del.1992), that Delaware law will govern Plaintiffs' pendent state law claims. Most of the defendant entities are Delaware corporations and partnerships, and as reflected in the Prospectus and partnership agreement, the parties agreed that Delaware law would govern.

Second, even if Delaware law does not govern, the Court finds that the state law claims are appropriate for class treatment because the state law claims involve the same issues, including the same alleged omissions and misrepresentations and other wrongful conduct, as the federal law claims. Clearly, the primary focus of this litigation is the federal law claims. Certification of the state law claims in addition to the federal law claims will at most add incremental burden to the class litigation. *Accord, In re IGI Secur. Litig.,* 122 F.R.D. 451 (D.N.J.1988); *In re New York City Shoes Secur. Litig.,* [1987–1988 Transfer Binder], Fed.Sec.L.Rep. (CCH) ¶ 93,670 (E.D.Pa. February 25, 1988).

Having concluded that all of the requirements of Rule 23(b) have been satisfied, the Court will certify the class as proposed by the Plaintiffs.

### *E. Motions to Compel*

Plaintiffs have also filed two motions to compel. In the first motion (D.I. 247), Plaintiffs seek an order compelling Defendants to produce all notes, memoranda, correspondence, drafts and other documents concerning a variety of issues related to the formation of the Funds. Defendants maintain that the requested documents are protected from discovery by the attorney-client privilege.

Plaintiffs advance five arguments as to why the attorney-client privilege does not protect the requested documents from discovery: (1) the Defendants may not assert the attorney-client privilege against limited partners; (2) the limited partners have good cause to undertake the discovery in question; (3) the matters in question relate to public disclosures in required filings; (4) Defendants have waived the privilege by repeatedly asserting a reliance on counsel defense; (5) the crime-fraud exception applies to the requested documents.

Plaintiffs first argue that Defendants as general partners can not assert the attorney-client privilege against the limited partners. Plaintiffs argue that limited partners of a partnership are considered clients of the law firm that represents the general partners. Moreover, contend Plaintiffs, because general partners owe a fiduciary duty to limited partners to act in the best interests of the limited partnership, the limited partners are entitled to full disclosure of all matters concerning the business of the limited partnership. This rationale has been applied to overcome the attorney-client privilege where the privileged communications were between a general partner and a law firm representing the partnership. *See Roberts v. Heim,* 123 F.R.D. 614, 625–26 (N.D.Cal.1988); *Abbott v. Equity Group,* No. 86–4186, 1988 WL 86826 (E.D.La. Aug. 8, 1988) (partners cannot assert privilege against other partners).

Defendants, on the other hand, cite to a line of cases where courts have distinguished the availability of attorney-client communications available to limited partners as opposed to general partners. *See Ferguson v. Lurie,* 139 F.R.D. 362, 366 (N.D.Ill.1991) (distinguishing the rights of general partners from those of limited partners with respect to disclosure of privileged communications). Rather than granting limited partners an absolute right to disclosure of privileged

communications, these cases require disclosure only where the party seeking disclosure demonstrates "good cause." *See Garner v. Wolfinbarger,* 430 F.2d 1093 (5th Cir.1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971). The parties have cited no case in this Circuit that addresses this issue.

The Court finds the better approach is to afford privileged communications between general partners and limited partnership counsel qualified protection. Requiring Plaintiffs to demonstrate good cause protects the purposes that underlie the attorney-client privilege while recognizing that disclosure of privileged communications may be necessary in certain instances to ensure that those in fiduciary positions, such as general partners, are acting in the best interests of their beneficiaries. Therefore, Plaintiffs must demonstrate good cause for disclosure of the privileged documents.

Plaintiffs argue that even if they do not have an absolute right to disclosure of the requested documents, they have demonstrated good cause for such disclosure under the principles set forth in *Garner v. Wolfinbarger,* 430 F.2d 1093, 1103 (5th Cir.1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971). In *Garner,* the Court held that "where [a] corporation is in a suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and the public require the availability of the [attorney-client] privilege be subject to the right of the stockholders to show cause why it should not be invoked in the particular instance." As stated above this principle has been applied to instances where a partnership is being sued by one or more of its partners.

In deciding whether good cause has been shown, *Garner* instructs the Court to consider a variety of factors, such as:

(a) the number of shareholders and the percentage of stock they represent;

(b) the nature of the shareholders' claim and whether it is colorable;

(c) the necessity of the shareholders having the information and the availability of it from other sources;

(d) whether the communication related to past or prospective actions;

(e) whether the communication is of advice concerning the litigation itself;

(f) the extent to which the shareholders are blindly fishing;

(g) the extent to which the communication, the confidentiality of which the corporation has an interest for independent reasons.

Applying these factors, the Court finds that Plaintiffs have demonstrated cause sufficient for the Court to order an in camera review of the requested documents. The plaintiff class, as certified by the Court's order of this same date, is substantial in number. Their claims are substantial and at least colorable. The information sought is not available from other sources, and may prove to be necessary to cross-examine a number of witnesses who have testified in depositions that they acted on advice of counsel. The communications requested do not involve the litigation itself.

Defendants argue that *Garner* is inapplicable because this is not a derivative action, and further that there was no mutuality of interests between the general partners in forming the Funds and the limited partners. Whether the suit is a derivative action or a class action is not determinative on the issue of whether the Funds and the general partners will be entitled to assert the privilege against the limited partners. It is merely one factor for the Court to consider in deciding whether there is good cause to overcome the privilege.

Defendants also argue that the key element in deciding the availability of the attorney-client privilege to a corporation, or as is the case here, a limited partnership, is the mutuality of interest between the fiduciary and beneficiary. Defendants assert that before the *Garner* rationale is to apply, the Court must find that mutuality of interest existed at the time the communications were made. Defendants argue that *Garner* does not apply because there was no mutuality of

interest between the Plaintiffs and Defendants during the formation stages of the Funds.

The Court will assume, without deciding, that Defendants are correct in their assertion that *Garner* applies only after the Court finds that there was a mutuality of interest between the Plaintiffs and Defendants at the time of the communications. Nonetheless, the Court does not agree that this mutuality of interest was lacking. Obviously, during the formation of the limited partnerships, Plaintiffs had not yet purchased their interests in the Funds. However, it is beyond question that during the formative stage, the Defendants and their counsels' communications related to matters which directly impacted subsequent investors in the limited partnership. *Accord Roberts*, 123 F.R.D. at 625–26. Moreover, the Court finds that the *Garner* balancing test weighs in favor of disclosure.

However, before Defendants will be required to produce the requested documents, Plaintiffs must identify, based on Plaintiffs' privileged document log, each document requested, the asserted relevance of the document, and the issue in the case to which the document will be addressed. Based upon Plaintiffs' submission, the Court will then determine what documents it will require Defendants to produce documents to the Court for in camera review. The Court will review any such documents to ascertain whether Plaintiffs have demonstrated good cause to overcome the privilege.

 Plaintiffs also contend that Defendants should be compelled to produce the withheld documents because Defendants have waived the privilege by asserting a reliance on counsel defense. Both parties agree that Defendants have not formally pled a reliance on counsel defense. Plaintiffs, however, argue that Defendants' witnesses have repeatedly answered questions related to the legality or appropriateness of certain conduct by stating that they relied on counsels' guidance. Defendants contend that until they answer the Complaint, ordering production of documents based on an anticipated defense is premature.

The Court agrees with Defendants that it is premature to order Defendants to produce privileged documents based upon a defense which they have not yet asserted. To do so would allow Plaintiffs to place in issue confidential attorney-client communications, perhaps forcing Defendants to waive their privilege. In this regard, the Court is not convinced that Defendants' responses to questions regarding certain acts taken or not taken amounts to an assertion of reliance on counsel.

However, the Court will revisit the issue once it receives Plaintiffs' submission regarding the specific documents it seeks. If, after a review of the documents in light of Defendants' witnesses deposition testimony as cited by the Plaintiffs, the Court determines that Defendants are using the privilege as a shield to liability, or if Defendants subsequently raise a reliance on counsel defense, the Court will order Defendants to produce the requested discovery.

 Plaintiffs' final contention raised in the first motion to compel, is that the crime-fraud exception to the attorney-client privilege applies to the requested documents. Indisputably, communications between an attorney and client made in the commission or furtherance of a crime or fraud are not protected by the attorney-client privilege. A party seeking discovery of otherwise privileged materials on the grounds that they are subject to the crime-fraud exception must make a prima facie showing of fraudulent or criminal conduct. *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 95 (3d Cir.1992); *Hercules, Inc. v. Exxon Corp.*, 434 F.Supp. 136 (D.Del. 1977). This requires the party seeking discovery to "present evidence which, if believed by the fact-finder, would be sufficient to support a finding that the elements of the crime-fraud exception were met." *Haines*, 975 F.2d at 95–96.

Plaintiffs have clearly failed to meet this standard. Plaintiffs have merely provided the court with an appendix of documents which they argue supports the multitude of allegations contained in the Third Amended Complaint. Plaintiffs have not, however, ventured to provide any argument as to what fraud the documents tend to prove, or even

to what allegations in the Complaint they relate.

Moreover, contrary to Plaintiffs' contentions, this presentation is insufficient for the Court to order an in camera review of the requested discovery. The decision to review materials protected by the attorney-client privilege implicates a much more lenient standard of proof than the determination to apply the crime-fraud exception. *Id.* at 96. In camera review is appropriate if the Court is convinced that the Plaintiffs have provided " 'a factual basis adequate to support a good faith belief by a reasonable person' ... that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." Plaintiffs have certainly *alleged* sufficient facts to warrant the application of the crime-fraud exception. However, mere allegations are not sufficient, and Plaintiffs have not provided the requisite factual basis. Accordingly, the Court concludes that the crime-fraud exception is inapplicable.

Plaintiffs' second motion to compel (D.I. 254) seeks an order compelling: (1) John M. Baker, an attorney from HW & D, to respond to deposition questions concerning facts upon which HW & D relied in rendering legal advice, and ordering Defendants to cease use of the attorney-client privilege as a bar to discoverable facts; (2) production of the "Hills Section 57 Memorandum" and any similar documents concerning due diligence by HW & D of the Funds' investments; (3) production of documents, including but not limited to minutes, notes, memoranda and recordings, relating to meetings between the Managing General Partner of the Funds and Advisers II concerning investments by the Funds; (4) HW & D to identify representatives of HW & D who attended such meetings; (5) Baker to identify documents he reviewed in preparing for his deposition; and (6) Baker to identify the areas of his deposition testimony discussed with his counsel and other Defendants' counsel while he was under oath.

To the extent that Plaintiffs seek disclosure of documents which Defendants allege are protected by the attorney-client privilege on the grounds that they have demonstrated good cause, or that Defendants have asserted a reliance on counsel defense, the Plaintiffs shall proceed as ordered above with respect to the documents requested in the first motion to compel.

In addition to a broad request for documents, Plaintiffs specifically argue that HW & D should be compelled to produce the "Hills Section 57 Memorandum" because Defendants have produced other privileged due diligence materials. A review of the other documents, however, reveals that there was no selective production of privileged material on the part of Defendants. Therefore, HW & D will not be compelled to produce this document, or other similar due diligence documents on this basis.[28]

Plaintiffs also seek to compel John M. Baker to respond to questions relating to the underlying facts on which he based his legal advice given to his clients. Plaintiffs argue that "it is the communication which is protected, not the facts underlying the communications." This is a mostly, but significantly not completely accurate, statement of the law. A fact, in and of itself is not protected just because it was communicated to an attorney. However, if the only reason the attorney has knowledge of the fact is by communications with a client, then the attorney can not be compelled to reveal it absent some exception to the attorney-client privilege. This goes to the heart of the attorney-client privilege. *See Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981).

Therefore, to the extent that Mr. Baker refused to reveal facts underlying his legal conclusions because he learned of those facts *solely* through communications with his client, he can not be compelled to disclose them. However, if Mr. Baker is aware of facts that he learned independently, even if also revealed in communications with his

28. In this regard, the Court grants HW & D's Motion to File Sur-reply Brief (D.I. 337). Plaintiffs did not provide the documents which served as the basis of their argument in their original submission, but included them in their reply brief. Accordingly, the Court deems it appropriate to provide HW & D with an opportunity to respond to essentially "new" arguments.

client, he must reveal those facts. *See Synalloy Corp. v. Gray,* 142 F.R.D. 266, 268 (D.Del.1992). As HW & D represents that Mr. Baker conducted himself in accordance with these principles, and the Court has no basis for questioning HW & D's representations, Plaintiffs' motion to compel Mr. Baker to further disclose facts upon which he legal advice was based will be denied.

Plaintiffs next seek to compel Mr. Baker to identify the topic areas of communications he had with his counsel during his deposition and while he remained under oath. In *Deutschman v. Beneficial Corp.,* 132 F.R.D. 359 (D.Del.1990), this Court set out an approach for questioning a deponent regarding any consultation with the deponent's attorney concerning his testimony or anticipated testimony. Under this approach, Plaintiffs are entitled to inquire into the topic areas that the deponent discussed with his attorney. The Court finds the approach outlined in *Deutschman* to be an appropriate means of monitoring the potential of improper coaching during a deposition. Therefore, Mr. Baker will be ordered to respond to Plaintiffs' inquiries regarding the topic areas of discussions he had with his counsel during his deposition while under oath. Moreover, in future depositions, all parties are instructed that counsel are not to consult with their clients regarding the subject of their testimony while questions are pending and while deponents remain under oath.

Finally, Plaintiffs seek to compel Mr. Baker to reveal those documents he used in preparation for his deposition. The Court declines to order a blanket production of all documents Mr. Baker reviewed in preparation for his deposition. *See Sporck v. Peil,* 759 F.2d 312, 316 (3d Cir.1985) (selection and compilation of documents by counsel in preparing for pretrial discovery constitutes attorney work product). However, in accordance with *Sporck,* the Court will order Mr. Baker to produce those documents which he testified refreshed his recollection of certain facts. *Id.* at 318–19 ("identification of such documents under Rule 612 should only result from opposing counsel's own selection of relevant areas of questioning, and from the witness' subsequent admission that his answers to those specific areas of questioning were informed by documents he had reviewed").

### *F. Plaintiffs' Motion to File Third Consolidated Amended Complaint*

Plaintiffs also seek leave to file a Third Consolidated Amended Complaint (D.I. 233). Rule 15(a) of the Federal Rules of Civil Procedure provides, in relevant part, that after a party has amended its pleading once, or after the other side has filed a responsive pleading, "a party may amend the party's pleading only by leave of court ... and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). In *Foman v. Davis,* 371 U.S. 178, 181–82, 83 S.Ct. 227, 229–30, 9 L.Ed.2d 222 (1962), the United States Supreme Court articulated the policy that informs Rule 15(a), which is to ensure that claims are decided on the merits rather than on the technicalities of pleading. The Supreme Court further stated:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be "freely given".... [O]utright refusal to grant the leave without any justifying reason appearing for the denial is ... an abuse of [the district court's] discretion and inconsistent with the spirit of the federal rules.

*Id.* at 182, 83 S.Ct. at 230. Defendants argue that filing of the proposed Third Consolidated Amended Complaint would severely prejudice Defendants by enlarging the scope of this case when discovery is near completion. Defendants argue that they should not be forced to devote resources to defending what is in large measure a new lawsuit.

Moreover, Defendants argue that Plaintiffs' motion is untimely and made in bad faith. Defendants note that Plaintiffs' motion comes 18 months after the case was

commenced, more than three years after they invested in the Funds and less than one month before the discovery cut-off date. Defendants urge the Court to examine Plaintiffs' delay in light of what Defendants characterize as Plaintiffs' "ulterior motive" for the proposed amendment, i.e. to litigate Fund I issues here since a separate Fund I action would be time-barred.

For their part, Plaintiffs argue that Defendants will not be prejudiced by the filing of the Third Consolidated Amended Complaint. Plaintiffs contend that Defendants can not show that they would be " 'unfairly disadvantaged or deprived of the opportunity to present facts or evidence which [they] would have offered' had the amendments been more timely." *In re ML–Lee,* slip op. at 6 (quoting *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing, Inc.,* 663 F.2d 419, 426 (3d Cir. 1981), *cert. denied,* 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982)). With regard to the new Fund I allegations, Plaintiffs point out that they support and supplement Plaintiffs' existing disclosure claims. With regard to the new count—that the Funds do not qualify as business development companies— Plaintiffs note, and the Defendants agree, that the facts upon which the Count is based were set forth in the Second Consolidated Amended Complaint.

Finally, Plaintiffs assert that they have not delayed in amending their complaint. Plaintiffs contend that through "further discovery and analysis of the facts" they determined to add allegations to support the disclosure claims. Moreover, they contest Defendants characterization of their "ulterior motive."

The Court would agree with Plaintiffs' contentions if Plaintiffs' motion involved a simple amendment to add a new cause of action, or a few new factual allegations to support an old cause of action. But, Plaintiffs' proposed amendments are not simple, nor minor. This is Plaintiffs' third attempt to amend its complaint; each time expanding not only the legal basis for its claims, but the factual underpinnings as well. The Court is cognizant that leave to amend is to be freely given, but there comes a time when the Defendants and the Court are entitled to know upon what grounds the litigation is to proceed. Plaintiffs' new allegations are so extensive as to encompass wholly new areas of inquiry.

Contrary to Plaintiffs' contention, the Court finds that Defendants will be "unfairly disadvantaged" by the filing of the proposed complaint. Accordingly, the Court will deny Plaintiffs' motion for leave to file the proposed Third Consolidated Amended Complaint.

However, the Court will order Plaintiffs to file an Amended Complaint which reflects the Court's rulings on Defendants' Motions to Dismiss. In addition, Plaintiffs are granted leave to add the new cause of action and factual allegations corresponding to Plaintiffs' contention that the Funds are not business development companies under the Investment Company Act.

### III. CONCLUSION

For the reasons outlined in the Court's discussion of Defendants' motions to dismiss, all Counts against HW & D are dismissed with the exception of Count IX, common law fraud. Count X is dismissed as against all Defendants. Insofar as any of the claims in Counts IV–VIII are premised on secondary liability for aiding and abetting, those claims will be dismissed.

HW & D will be permitted to remain in the suit as counsel for the Lee Defendants until such time as the Court determines that the ethical rules prohibit them from continuing.

The Court will certify the class as proposed by the Plaintiffs.

Plaintiffs' motion to compel the production of documents being withheld by Defendants as protected by the attorney-client privilege will be denied. However, the Defendants will be ordered to produce the withheld documents to the Court for in camera review. In addition, Plaintiffs' motion to compel certain responses from Mr. Baker will be granted in part and denied in part as detailed in this Memorandum Opinion.

Finally, Plaintiffs' motion for leave to file proposed third amended complaint will be denied.

An appropriate Order will be entered.